GOTTLIEB v. HARTMAN.

1. Where a bailee of goods for safe-keeping merely pledges the same with intent to convert the proceeds to his own use, such pledge amounts to larceny by the pledgor, and the pledgee acquires no title as against the owner, though he dealt *bona fide* with the pledgor.

2. In an action of trover, it is not error to instruct the jury that a demand before suit brought is unnecessary, if the jury believe from all the evidence that demand, if it had been made, would have been unavailing.

3. To instruct a jury that though they are the sole judges of the credibility of a witness, yet if they believe that he has sworn falsely in any particular, they are at liberty to disregard the whole of such witness' testimony, would be error. The element of corrupt intent is essential in such case, and should be embodied in the instruction.

4. A hypothetical question must be based upon the hypothesis of the truth of all the evidence, or on a hypothesis especially framed of certain facts assumed to have been proved.

*Appeal from the District Court of Arapahoe County.*

UPON the trial of this cause in the district court, the plaintiff, Maggie Hartman, testified, that about the 1st of December, 1873, she deposited with one Morrison, for safe-keeping, certain diamond rings and other personal property of value; that Morrison was keeping a restaurant in Denver, and that she was staying at his house; that she never saw Morrison after the 4th of December, 1873, and had not seen the property after she gave it into his keeping; that

.Morrison disappeared about the 4th of December, 1873, and upon opening his safe, the plaintiff and one Dugan, who was an employee of Morrison, found a pawn ticket, signed by the defendant Gottlieb, purporting to be for the pledge of four diamond cluster rings and a lady's gold watch and chain. The plaintiff further testified that she procured a search warrant, placed it in the hands of William A. Smith, a con-.stable of the county, and directed "him to make search at Mr. Gottlieb's, and he did so." Smith testified to having visited defendant's store with the search warrant, that he searched the premises, but could not find the property. The witness also testified as follows: "When I got through and could not find them, I demanded them of him; I asked him where they were; he said, 'I don't know—I did have them;' I told him there would be trouble; he said, 'if you can find them, why you find them.' I think I went back next day and demanded them of him again; he said he did not have, hadn't got them, at least. This was on the same day the writ was issued—the 6th of December."

The witness Dugan, after testifying to his being in the employ of Morrison during November and December, stated: "When I went there the large diamond ring, with twelve diamonds and emerald, was up for raffle; Morrison showed me the ring; it was put up for raffle before I went there to work; I think in about two weeks after I went there the raffle was abandoned; Morrison had a safe, to which he and myself had access; the ring was kept in the safe, in the little iron box inside the safe; I supposed the ring was given back to Mrs. Hartman after the raffle was abandoned; that was my understanding." Thereupon the plaintiff's counsel asked the witness the following question, to which the defendant objected, because the same was incompetent, to wit: "What reason have you to suppose it was given back?" but the court overruled the objection; defendant excepted. Witness answered as follows: "The ring was taken out of the safe, one reason, and my impression is Morrison told me so; I know the raffle was abandoned; I never saw any

other ring in the safe; the defendant saw the ring while it was in the possession of Morrison to raffle; I showed the ring to him; another gentleman came in and wanted to see it, and while he was there Morrison came in, and they had some conversation about it; Morrison told him he could buy the ring." Defendant's counsel here moved to strike out the answer of the witness in regard to the conversation, because the same was immaterial, but the court permitted the same to stand, to which the defendant excepted."

This witness was also permitted to testify to conversations had with Gottlieb subsequent to the bringing of the action, which was objected to by defendant as incompetent, immaterial, irrelevant and improper.

It is deemed unnecessary to specify more particularly the evidence and the many objections made by the defendant to its character and materiality; many of the material matters are discussed in the opinion of the court. The plaintiff had judgment for $1,325, from which the defendant prosecuted this appeal.

The instructions mentioned in the opinion of the court upon which errors were assigned, were as follows:

"If plaintiff was the owner of the jewelry in question, and deposited the same with Morrison for safe-keeping merely, and without other and further authority, and Morrison thereupon pledged or pawned the same to the defendant, intending, at the time of such pledge, to convert the proceeds to his own use, such pledge amounted to a larceny by Morrison; even though the defendant was, in truth, ignorant of Morrison's want of authority in the premises, and dealt with him in good faith, defendant nevertheless obtained no *title* by such pledge; the plaintiff's right still continues, and so far as this point is concerned, plaintiff may recover."

"If at the time of such alleged service of the search warrant, if it occurred, defendant made any declaration to Smith as to the whereabouts of the property, or his knowledge thereof, you may consider all that occurred in deter-

mining whether a demand of the property, if one had been made, would or would not have been availing; and if you conclude, from the consideration of all the evidence, that the defendant would not have surrendered the property to plaintiff, if she had demanded it, then the plaintiff may, so far as this point of the case is concerned, recover, notwithstanding you should believe, from the evidence, that no demand at all was made."

In the supreme court the appellant contended that the record did not show that he had ever received the chattels declared upon; that they were not shown to have been in his possession at the time of the action brought, and that if these facts did sufficiently appear, yet there was not evidence of conversion by refusal to surrender upon demand, or otherwise; that Smith, being an officer, his warrant was his authority; all the conversation had between Smith and the plaintiff was in reference to action under the warrant; that there was no evidence that he acted in any other capacity; no evidence that Gottlieb knew Smith or thought of him in any other capacity. If Smith was the plaintiff's agent for the purpose of making a demand, such agency should have been first distinctly proved; and, secondly, the knowledge of it should have been brought home to Gottlieb. A duty was to be raised upon the part of a third person; hence it was necessary that there should have been a *previous* authority; an adoption *ex post facto* of Smith's action was not sufficient. That a demand and refusal were necessary in all cases where the defendant became lawfully possessed of the goods, unless the plaintiff could prove a *distinct actual* conversion. That when a party, lawfully coming into possession of the property of another, parts with the possession previous to demand, the remedy is case or assumpsit, not trover.

That trover could be maintained only on the ground that the defendant was a wrong-doer; that a defendant should not be found guilty upon inference, and that there should be a preponderance of evidence against him to find

a verdict of guilty; that the *title* to the chattels is not necessarily involved in an action of trover, but that damages for the wrongful deprivation of possession is the gist of the action; that the nature of the action impliedly admits some title in the defendant.

In concluding the argument, counsel for appellant used the following language:

"The maxims of the law which we have suggested as applicable to this case are not mere idle phrases, to be waived or adopted at pleasure. They are established; they mean something; they are binding as any positive enactment of the legislature; they are discussed to a greater or less extent in nearly all the decisions in this class of cases, and we think we cannot conclude our argument in a more satisfactory way than by bringing these maxims together, with a statement of the case:

" 1st. An owner may not be deprived of his property without his consent.

" 2d. Possession of personal property is the criterion of title.

" 3d. That he who, without intentional fraud, has enabled any person to do an act which must be injurious to himself, or to another innocent party, shall himself suffer the injury rather than the innocent party who had placed confidence in him.

" 4th. A positive tortious act is necessary to support trover.

" Mrs. Hartman gave her chattels to Morrison for safekeeping. She retained the ownership with right of possession. Before she could sue Morrison in trover she would have to demand the goods and be refused. Morrison pledged the goods to Gottlieb. This was a distinct act of conversion on the part of Morrison, which, if proved in an action against Morrison, would do away with any necessity for a demand and refusal to show conversion. While the possession in law remained in Mrs. Hartman, the possession in fact, by her consent, was in Morrison. Morrison, so far

as third parties were concerned, was clothed with the criterion of title upon which third persons had the right to rely. Could Morrison, by his wrongful act, place Gottlieb, the other innocent party, in any different position from that occupied by Morrison before he (Morrison) committed the wrongful act? Before Morrison did the wrong he was entitled to have demand made before suit brought. Could he, by his wrong to both parties, put Gottlieb in such a position that Gottlieb would not be entitled to a demand? Certainly not. Morrison knew he had no right to pawn the goods; hence *his* act was tortious. Gottlieb did not know that Morrison had not this right, hence his act of receiving the goods could not be tortious. A positive tortious act is necessary to support trover. When did Gottlieb commit this positive tortious act? The record does not show.

"An owner cannot be deprived of his property without his consent. The plaintiff, so far as third persons are concerned, did consent to part with, and did of her own volition part with the indicia of ownership. The application of the first rule, therefore, suggested on behalf of appellee is met by the second, and the force of it materially weakened if not destroyed, or, more properly speaking, perhaps the first rule is shown to be the least applicable to this case.

"The third rule necessarily follows, being a maxim of natural justice, applicable to all dealings between men; and last, the positive tortious act must be committed by the *defendant* or by some *one under his control.*"

Messrs. FRANCE & ROGERS, for appellant.

Mr. CHARLES S. THOMAS, and Mr. T. M. PATTERSON, for appellee.

BRAZEE, J. The declaration was in trover for one diamond cluster ring, value $900; one diamond cluster ring, value $450; one diamond cluster ring, value $300; one lady's gold watch, enameled case, set with precious stones,

value $200 ; one lady's gold neck chain, value $150.    Plea, not guilty.

The evidence tends to show among other things, that the articles in question were delivered to one John Morrison by the appellee, the owner of the property, for safe-keeping, and that he pawned them with the appellant, without authority from the appellee, for $742. 50, and that there is no evidence tending to show the contrary.

It is claimed by the appellant that the proof was not sufficient to show the title in the property and the right of possession in the appellee, and a conversion thereof by the appellant.    We think the evidence in this respect sufficient to sustain the verdict.

There was evidence tending to show a demand of the property before suit, a wrongful conversion, a loss of the property by larceny, and that a demand was unnecessary.

Therefore, the exceptions to instructions given to the jury respecting the law, applicable in case they should find either a wrongful conversion of the property by appellant, or a larceny of the property by Morrison, or that a demand was made, or that a demand would have been unavailing, were not well taken.

The charge did not, as claimed by appellant's counsel, authorize the jury to *assume* any thing against the appellant.

All the requests of appellant, which were proper to be given, were substantially given by the court to the jury ; the instructions as a whole gave the case fairly to the jury, while the requests to instruct, refused by the court, were properly refused.    But one of these requests requires further notice.

The court was requested to instruct the jury "that they are sole judges of the credibility of the several witnesses, and that if they believe from the evidence that one of the witnesses has spoken falsely in any particular, then the jury are at liberty to disregard all the evidence of the witness."

This request contained two distinct propositions. One, that the jury are the sole judges of the credit due the witnesses. This proposition applied to the evidence in this case is correct. The other proposition contained in the request is, that if the jury believe from the evidence that a witness has testified falsely in any particular, the jury are at liberty to entirely disregard his testimony. This is not the rule.

A witness through mistake, from imperfect memory, or through a misunderstanding, may unintentionally tell an untruth in evidence. In such case, although the jury might believe, from all the evidence, that the witness had testified falsely in some particular, they would not, therefore, be at liberty to wholly discredit the witness unless they further believed from the evidence that the witness had intentionally told an untruth.

This element of corrupt intent, the request under consideration wholly omitted; hence in this respect, the request was improper. The request containing a proper and an improper instruction could not legally be given as a whole.

The appellee was a witness on her own behalf. She was permitted to testify after appellant's objection to what she told one Smith, and Smith, under like objection, testified to the same conversation and also to what he did thereafter in demanding and searching for the jewelry.

This evidence was proper as tending to show that she authorized him to demand the property for her, and that a demand in pursuance of the authority was made.

Afterward she was recalled and asked certain questions, which were objected to on the ground that they were improper on re-examination; the objection was overruled, and she answered the questions. The ruling was excepted to, but it was within the discretion of the court to allow the witness to be re-examined, and that cannot be assigned for error.

The objection to appellant being called as a witness for appellee was not well taken. *Texas* v. *Childs*, 21 Wall. 489.

A witness, Dugan, was asked his reason for supposing that certain jewelry had been returned to appellee, and after objection, was properly allowed to answer, because the answer might have developed some material fact. The witness, in answering, stated an impression which was improper, but in connection with it, a material conversation and transaction at which appellant was present. The appellant moved to strike out the material conversation, which motion the court properly overruled. The testimony of the witness Dugan, to other conversations with the appellant, relative to the matter in controversy, was properly admitted.

A search warrant which Smith had, after objection by appellant, was read in evidence, but it does not appear in the record, and we are, therefore, unable to determine that it had any effect prejudicial to appellant.

The appellee, as a witness for herself, testified, among other things, in substance, that she owned a ring set with twelve diamonds, having a green emerald in the center; one ring having six quite large diamonds; one ring having nine smaller stones; a gold watch about the size of half a dollar, enameled purple and green, the case set with thirty-two or thirty-three diamonds, the smallest about the size of a pin head, three or four diamonds out; and that she owned a gold chain, a yard long, double, about as thick as a pencil, weighing near a hundred pennyweights; that she paid $300 for the watch and chain; that Dr. Hartman had examined the watch and chain, and Hatch and Davidson had examined the rings; and other evidence tended to show that appellant had converted these articles.

Dr. Hartman testified in substance, that he had knowledge of a gold watch and chain owned by her, a lady's watch, little larger than a silver half dollar, enameled and set with diamonds; and of a gold chain owned by her, about a yard long, double, very fine, nearly a quarter of an inch thick.

C. C. Hauck testified that he was a watchmaker and jeweler, engaged in dealing in watches and jewelry, and was

acquainted with the market value of such things ; he was then asked to state what, in his opinion, would be the value of a lady's gold neck chain about a yard in length, double, making two yards, about as thick as a pencil, weighing about one hundred pennyweights, an ordinary gold chain of these dimensions ; this was objected to by appellant on the ground that there was no evidence to support the question, and because incompetent, immaterial and improper.

The objection was overruled, and appellant excepted. The answer was in substance,—a chain like that, a fourteen carat chain, was worth $175, in that neighborhood. He further testified, after a like objection and exception, to a like hypothetical question, that the value of a lady's gold enameled watch, in circumference a little larger than a half dollar, thirty or thirty-two diamonds in the back, about the size of a pin head, or a little larger, two or three diamonds out, depending a great deal on fineness, would be about $100, as near as he could get at it without seeing the goods.

The ruling of the court upon these questions, against the appellant, is assigned for error.

The cases cited by the learned counsel hardly go to the extent of showing these questions to have been improper. In 3 Douglas, 157, the question was, whether an embankment had caused the filling up of a harbor, and it was held that the opinions of scientific men were competent evidence in this question. In 45 Me. 397, the opinions of a physician, formed upon hearsay, as to the mental condition of a party, was held not to be competent, but that his opinion would have been competent, if predicated upon facts, testified to by himself or others. In 2 Comst. 514, without stating any fact upon which his opinion was based, except having seen certain cattle and the hay upon which they were fed, and without any other fact appearing, a witness was allowed to state his opinion of the amount of damage to the cattle resulting by reason of defendant not feeding them with as good hay as he had agreed, which was held to be improper. These cases go no farther than to main-

tain the general rule that the opinion, in a proper case, to be admissible, must be based upon evidence of facts, or upon facts in evidence in the case, but they do not throw any light upon the proper form of the hypothetical questions by which the opinion should be elicited, nor how the facts upon which the hypothesis are based should be determined. I have taken some pains to find a plain statement of the rule applicable, and find it more tersely stated in *Carpenter* v. *Blake*, 2 Lans. 206, than elsewhere. It is there held that the hypothetical questions must be based upon the hypothesis of the truth of all the evidence, or on a hypothesis especially framed of certain facts assumed to be proved for the purpose of the inquiry. Such questions leave it for the jury to decide, in the first case, whether the evidence is true or not, and in the second case, whether the particular facts assumed are or are not proved.

The questions under consideration were framed upon hypothesis assumed to be proved; there was some evidence before the jury tending to show the truth of the hypothesis, and the questions were, therefore, proper.

As to Hatch and Davidson's testimony, no question is made upon the argument, except as to the sufficient identification of the property. We think it was sufficiently identified.

There is sufficient evidence to support the verdict in respect to amount. It does not appear to be excessive.

In my opinion the judgment should be affirmed, with costs.

*Affirmed.*