## BELL v. KAUFMAN ET AL.

1. FRAUD—CONTRACTS—RESCISSION.
Fraud renders all contracts voidable, both at law and in equity.
2. SAME.
The fraud for which a contract may be rescinded must have been successful in deceiving and have been acted upon by the party deceived.
3. SAME—EVIDENCE.
Where the seller rescinds the sale and brings replevin to recover the goods, testimony by the purchaser that he did not intend to cheat, deceive or defraud, is inadmissible.
4. SAME.
To authorize the rescission of a sale on the ground of false representations on part of the purchaser, it is not necessary that the representations should have been the sole cause or even the principal inducement. It is enough if they had material influence upon the plaintiff, though combined with other motives.
5. SAME.
If a purchaser makes false representations as to his ability to pay, his property or credit, a sale upon credit is void; and, as between the parties, no title passes.
6. JURY—CREDIBILITY OF WITNESSES.
The jury are the judges of the credibility of the witnesses; and in de-

termining this, they may consider the situation of the witnesses and the circumstances in regard to the controversy which, in human experience, are known to affect perception, memory and judgment.

*Appeal from the District Court of Clear Creek County.*

A SUIT of replevin of a lot of ready-made clothing alleged to have been worth $579, of which appellees were the original owners. Appellant was sheriff and seized the goods upon a writ of attachment at the suit of I. L. Rachofsky v. David Hepner. Plaintiffs filed the following replication to the answer of the appellant:

" That said David Hepner was not the owner of the goods and chattels replevied at the time. Deny that said goods and chattels were subject to levy under attachment of I. L. Rachofsky. That said Hepner, for the purpose of inducing plaintiffs to sell and deliver said goods to him, represented to plaintiffs that he was solvent and worth the sum of $9,000 over and above all his liabilities, and that all his debts and liabilities did not at that time amount to more than $3,000, and that said representations were made for the purpose of obtaining said goods on time credit. That plaintiffs relied upon said representations, and were thereby induced to sell said goods to Hepner on credit. That said representations were false, and by Hepner known to be so at the time they were made. That Hepner was then insolvent and knew himself to be so. That at the time when said representations were made the said Hepner was indebted to one I. L. Rachofsky in a sum exceeding $4,569, and to one Alexander Rittmaster in a sum exceeding $3,995, and to divers other persons unknown to plaintiffs in a sum exceeding $——, and that said representations were made with intent to deceive and defraud the plaintiffs. That plaintiff rescinded the sale of the goods and chattels to Hepner immediately upon the discovery of the fraud practiced upon them, and did immediately bring their action to recover possession of said goods and chattels, and that the purchase price of the same nor any part thereof has been paid to plaintiff."

The case was tried to a jury, to whom the following instructions were given, Nos. 6 and 8 being the only ones that require attention:

· "The court instructs the jury that you are the judges of the credibility of the witnesses and the weight to be attached to the testimony of each and all of them, and you are not bound to take the testimony of any witness as absolutely true, and you should not do so if you are satisfied from all the facts and circumstances proved on the trial that such witness has testified falsely in any matter testified to by him, or if his testimony is contrary to the experience of men under like circumstances."

"If the jury believes from the evidence that Hepner obtained the goods in question from the plaintiff upon credit without making to them any false statement or misrepresentations as to his financial worth or ability to pay for said goods, but honestly and in good faith and with the intention of paying therefor, then your verdict should be for the defendant."

Excepted to by defendant.

The following instructions were asked by the defendant and refused by the court:

"The jury are instructed that they cannot find for the plaintiff in the case unless they believe from the evidence: *First*, that Hepner purchased the goods from plaintiffs upon false and fraudulent representations made to them for the purpose of obtaining the same and without any intention of paying for them ; and, *second*, that Rachofsky and Rittmaster, his attaching creditors, had knowledge of such fraudulent purpose. upon the part of Hepner at the time they caused their writs of attachment to be levied, and if the jury find that both of these conditions do not concur, their verdict must be for the defendant."

Refused and exception taken.

"The court further instructs the jury that in this case, before the plaintiffs under the law would be allowed to rescind the contract of sale of the goods replevied, they must

believe from the evidence that Hepner purchased the goods with the intent never to pay for the same, and this intent is a question of fact to be found by the jury from all the circumstances and surroundings of Hepner at the time when he made the purchase."

Refused and excepted to.

" The court instructs the jury if they believe from the evidence that Hepner purchased the goods from the plaintiffs, and at the time of such purchase he had an honest belief that he had the financial ability to pay the purchase price thereof, and that he fully intended at the time of such purchase to pay the purchase price of the same, then the jury may take these facts into consideration in determining the character of the representations made (if you believe from the evidence any such representations were made at the time of such purchase)."

Refused and exception taken.

" The jury are instructed that if they believe from the evidence that Rachofsky and Rittmaster, the attaching creditors of Hepner, had no notice of the misrepresentations of Hepner (that is, if they believe such misrepresentations were made to the plaintiffs in this suit) concerning his financial standing and the conditions of his assets and liabilities at the time they caused their writs of attachments to be levied upon the goods so purchased, then they cannot be affected by such representations, and your verdict should be for the defendant."

Refused and exception taken.

" The jury are instructed that the plaintiffs admit in their pleadings the indebtedness claimed by the attaching creditors against Hepner at the time of the commencement of their actions in attachment, and, further, the plaintiffs do not charge any fraud or collusion as between said attaching creditors and Hepner in the commencement of their suit, or charge any knowledge upon the part of said attaching creditors of the fraudulent character of Hepner's purchase from the plaintiffs, and no issues are made up between the parties to this

action concerning the same. You are, therefore, to consider in your deliberations said indebtedness as *bona fide* and said attaching creditors as innocent of any fraud upon the part of Hepner, if you believe there was such fraud."

The jury found for the plaintiffs and the value of the property to be $293.50. Judgment upon the verdict and an appeal to this court.

Mr. C. C. POST and Mr. ALVIN MARSH, for appellant.

Mr. A. D. BULLIS, for appellees.

REED, P. J., delivered the opinion of the court.

A great mass of testimony was taken, covering nearly one hundred pages of printed abstract, and part of which was depositions and documentary. The evidence shows conclusively that at the time that Hepner purchased the goods in question from appellees he was hopelessly insolvent and that within about thirty days after the last purchase was closed up by the sheriff; also that Hepner made to appellees and their agent false and fraudulent statements in regard to his solvency, the amount he was worth and his liabilities. It was also testified by appellees and Metz, their agent, that the sale was induced and made by appellees upon the false statements of Hepner. It was also shown that the goods were delivered, went into the general stock of Hepner upon his shelves, and were identified and taken out of the stock upon writ of replevin.

The questions presented are of law : 1st. Whether appellees could under the conditions and circumstances rescind the contract of sale and retake the goods. 2d. In regard to the instructions of the court given and refused.

There are several minor questions presented by assignments of error based upon the admission and refusal of evidence. Although, perhaps, the rulings in some minor respects were open to criticism, we find no serious error that could have

prejudiced appellant or changed the result. One supposed error may be briefly examined :

Hepner was asked: " Q. At the time you made this purchase of Kaufman Bros., you may state at that time what, if anything, was your ability to pay whatever you purchased of them?" Objection sustained. " Q. State why you did not continue business?" Objection sustained. " Q. State if you expected to go on and continue business? A. Yes." Stricken out. It is claimed that for the purpose of rebutting the presumption of fraud the explanatory statements should have been received. We cannot see that any answers that might have been given to the questions asked would have had that effect. The statements made to Kaufman were in regard to his financial condition, that he had a stock worth $12,000, $2,000 or $3,000 in available book accounts, that he only owed $3,000. The figures were given by Hepner,— stated as facts. If absolutely untrue, the fact must have been known to him. The rebuttal could not be explanatory or apologetic. Rebuttal could only have been by evidence that he never made such statements, or that they were true. If false, they must of necessity have been so known at the time. If insolvent, as shown at the time, the law presumes, and the jury had the right to presume, that the statements were made fraudulently for the purpose of obtaining the goods.

In support of the contention, counsel cite 1 Benj. on Sales, sec. 630, and *Pope v. Hart*, 35 Barb. (N. Y.) 630. In the first, in section 636, the broad, general rule is stated as follows : " Fraud renders all contracts voidable *ab initio*, both at law and in equity. No man is bound by a bargain into which he has been deceived by a fraud, because assent is necessary to a valid contract, and there is no real assent where fraud and deception have been used as instruments to control the will and influence the assent." See, also, *Bank v. Higginbottom*, 9 Pet. (U. S.) 48 ; *Duncan v. McCullough*, 4 Sergt. & R. (Pa.) 483.

The rule is also stated to be that the fraud that warrants

the rescission and renders it voidable *ab initio* was believed, acted upon and was successful in deceiving ; in other words, that without the fraud the transaction would not have been made. See, 1 Benj. on Sales, sec. 637.

In *Pope v. Hart, supra,* it is held that a party charged with an *intent* to deceive, or cheat, or defraud, or with fraud and deceit, has a right to testify in his own behalf *that he did not intend to cheat, deceive or defraud,* and that the weight of such testimony was for the jury ; but on examining the case it is found to be a criminal prosecution. No question of the ownership of property or rescission of a contract of sale was involved.

If such a rule is to prevail in cases of this character, a party may fraudulently obtain possession of property, swear afterwards as to his *intention,* and, if believed, establish title, when a different intention was clearly deducible from the facts proved.

The most comprehensive and concise statement of the law of this case is at 1116 of the Civil Code of France : " Fraud is a ground for avoiding a contract when the devices practiced by one of the parties is such as to make it evident that without these devices the other parties would not have contracted."

The decisions of Pennsylvania and Indiana are of the extreme in favor of appellant. In *Smith v. Smith,* 21 Pa. St. 367, and *Rodman v. Thalheimer,* 75 Pa. St. 232, it is said : " The fraud to avoid a sale must be actual artifice intended and fitted to deceive."

In *Gregory v. Schoenell,* 55 Ind. 101, the court said :

" In such a case, to establish fraud, and authorize a rescission of the contract for that cause, the representations made must have been such as were calculated to deceive a person of common prudence ; they must have been false, and known to be false, at the time, by the person who made them, and the person to whom they were made must have believed them to be true, and relied upon them ; and they must have been the inducement which caused him to part with his prop-

erty.   A fraud, by which no one is deceived, is harmless in law."

Artifices which do not deceive do not warrant an avoidance of the contract.  Tested by these, and the case made by appellees, brought it within the rule.   As before stated, these are the strongest decisions that can be found to support the contention of appellant.   That it is not necessary that the false representations should have been the sole cause or even the predominant motive, and that it is enough if they had material influence upon the plaintiff, though combined with other motives, see *Safford v. Grout*, 120 Mass. 20; *Matthews v. Bliss*, 22 Pick. (Mass.) 48; *Ruff v. Jarrett*, 94 Ill. 475; *McAleer v. Horsey*, 35 Md. 439; *Hersey v. Benedict*, 15 Hun (N. Y.), 282; Addison on Cont., *1173; *Load v. Green*, 15 M. & W. (Eng.) 216; *White v. Garden*, 10 C. B. (Eng.) 919.

In 2 Parsons on Cont., *773, it is said: " It is clear that if a purchaser makes false representations of his ability to pay, his property, or credit, the sale is void, and no title passes as between the original parties to the contract; "— citing *Cary v. Hottailing*, 1 Hill (N. Y.), 311; *Andrew v. Dieterich*, 14 Wend. (N. Y.) 31; *Johnson v. Peck*, 1 Woodb. & M. (U. S. C. C.) 334; *Lloyd v. Brewster*, 4 Paige (N. Y.), 537.

In addition to what has been before said, I may add that where there is direct proof of false representations, and they are not denied, but tacitly admitted, and also proof that such false statements induced the sale, the testimony of the party as to his intentions in making them could not be competent to divest the injured party of ownership of the goods.   The facts established were such as to avoid the sale and warrant a rescission.

Error is assigned upon the sixth instruction given by the court.   It is contended that it is not the law, and counsel say: " The proposition that the jury has the right to disbelieve such witnesses as in their judgment, under all the cir-

cumstances in the case, are unworthy of belief, is not the law."

This is certainly very ambiguous. There is no attempt to apply it to any witness of appellant or to the testimony of any particular fact, and the instruction is so general that it applies equally to the witnesses of appellee, and, if erroneous, it is not shown that it in any way prejudiced appellant.

Counsel in support of their contention cite *Gottlieb v. Hartman*, 3 Colo. 53, and *Hartford Life Ins. Co. v. Gray*, 80 Ill. 28.

We do not consider those cases applicable. In both the inference from the instruction was that the jury might wilfully disregard the testimony of any witness on their own judgment as to his veracity. We do not so construe the instruction in question. Though amplified and elaborated, it only amounts to the well-established rule that the jury are judges of the credibility of witnesses, and in determining it were to consider the situation of the witness in regard to the controversy and the circumstances " which, in human experience, are known to affect perception, memory and judgment.".

Error is also assigned upon the eighth instruction, but, upon examination, it appears to have been clearly in favor of appellant, and fully as strong, if not stronger, than warranted.

The instructions asked by appellant were properly refused. Some of them were clearly objectionable. Those given were sufficient to inform the jury in regard to the law of the case.

The judgment should be affirmed.

*Affirmed.*