[No. 6229.]

## THE NATIONAL FUEL COMPANY v. GREEN.

1.   Pleading—Complaint—Separate Causes of Action—Under the provisions of the code (sec. 76), the defendant may insist that separate causes of action shall be separately stated.   To deny a motion to this effect, interposed in apt time, is prejudicial error.   But there is no requirement that the plaintiff shall state in separate counts the several distinct matters upon which he relies to support a single cause of action.   Therefore, in an action for an injury attributed to the negligence of defendant, where the acts and omissions' complained of produced a single injury and one damage, which are the subject-matter of the action, both common-law and statutory negligence may be charged in the same count.—(312, 313)

And the plaintiff will not be required to elect between them. —(314)

2.   ——Construction—A complaint is to be considered as a whole.   Particular averments, not in themselves constituting a cause of action, but which, taken in connection with others, have or may have this effect, are not to be stricken out.—(313)

3.   ——Certainty—In an action by servant against master for personal injuries attributed to the negligence of the latter, in failing, among other negligences, to provide safe and proper appliances for stopping certain cars moving in the passage-way where the servant was employed, defendant moved the court to require plaintiff to make the complaint more specific as to the appliances, the omission to provide which was charged.   Held, that inasmuch as the defendant must know what appliances he had provided, and could not be misled by the generality of the averment, the motion was properly denied.—(313, 314)

4.   ——Negligence—The servant complaining of the master for negligence must state facts and circumstances from which the law will imply that a legal duty resting upon the master has been violated.   But where the complaint for a personal injury sustained by the servant while employed in a coal mine, attributed such injury to the master's failure to exercise reasonable care to provide safe, proper and necessary appliances for stopping certain cars operated in the entry or passage-way where the plaintiff was employed, so as to effectually secure and prevent them from getting beyond control, and running down and over the track where plaintiff was serving, in the course of his employment, it was held sufficiently full and certain.—(314, 315)

5.   Master and Servant—Appliances—Plaintiff, employed in

defendant's coal mine, was conveying empty cars from the pit to a certain parting, or side-track. Loaded cars coming from the other direction escaped from the driver's control, ran down a declivity in the track, and collided with those which plaintiff was driving, doing him serious injury. It appeared that a stop-block or bumper was customarily provided at such places, by those operating coal mines, to stop a car, and prevent it from running down the track, where other means failed;. that the stop-block in this mine was out of order and could not be operated; that it had been in this condition for a fortnight; that the servant charged with the duty of keeping it in order knew of its defective condition; that defendant neither knew of the defect, nor was negligent in not informing himself of it; and that this defect was the cause of the escape of the car, and of the plaintiff's injury. Held, the master was liable.—(315-320)

6. ——Negligence of Master Concurring With That of Fellow-Servant—Where, in the action of servant against master alone, the complaint charges negligence against both the master, and another servant, evidence of negligence on the part of the master suffices.—(321)

7. ——Servant's Assumption of Risk—Contributory Negligence—A servant obeying the orders of those in authority over him is excused, unless he thereby incurs a danger so manifest and imminent that a person of reasonable prudence would refuse obedience, even under the penalty of discharge.—(326)

8. Appeals—Harmless Error—Where, upon competent testimony admitted, the verdict is a proper one, and a different verdict could .not have been supported, the admission of 'incompetent testimony is harmless.—(320)

So of any evidence which could not have prejudiced the defeated party.—(321)

So of a variance between the allegations and the proofs by which the adversary party is not misled.—(320)

9. Evidence—Opinions—A question as to whose duty it is to keep in repair the appliances provided in a coal mine, for preventing the escape of cars as they are moved along the tracks, is one of fact, and not merely of opinion.—(320)

10. ——Variance—Substance of the Issue—A charge of failure to provide proper and safe appliances is supported by evidence that the appliance provided, though a proper one, was so out of repair as to be useless.—(322)

11. Damages—Personal Injury—Elements of Damage—A minor suing for a personal injury may recover not only for the mental and bodily suffering occasioned by the injury, but for

liabilities incurred by him in being cured, or treated for his injury. That he might avoid liability for the expenses so incurred, by reason of his minority, is no bar to the recovery. His minority is a personal privilege of which no third person can have advantage.—(321)

12. ——Remittitur — An error in awarding damages to which the plaintiff is not entitled may be cured by a remittitur in writing, filed with the clerk of the trial court.—(325)

13. Instructions—Construction—Instructions must be considered as a whole. Where, in an action by servant against master for negligence in the matter of appliances, the duty of the master is properly and clearly stated in the charge, as that of reasonable care only, objection made to a subsequent passage in which it is declared that the master is liable if the appliances were not of such character as a reasonably prudent person would consider safe, was held to be without merit.—(322, 323)

14. ——Objections to, and Exceptions—A general objection to an instruction containing independent and distinct propositions of law, some of which are correct, will not suffice. It is the duty of counsel in such case to point out the particular part of the instruction to which objection is taken.—(324)

15. Proximate Cause—A loaded car escaped from control and ran down a declivity in defendant's coal mine, injuring plaintiff, an employee. The failure to prevent its escape was due to the defective condition of the stop-block; but its escape from the control of the driver, in the first instance, was attributable to the mutinous conduct of the mule drawing the car. It appearing that rebellion on the part of the mule was of frequent occurrence, that the defendant knew this, and that if the appliance had been in good order the injury would not have occurred, it was held, that the misconduct of the mule was not to be regarded as an efficient intervening cause, and that the defendant's negligence in the matter of the stop-block was the proximate cause of the injury.—(326, 327)

*Appeal from Boulder District Court*—Hon. CHRISTIAN A. BENNETT, Judge.

Mr. W. E. HUTTON, Mr. JOHN F. MAIL and Mr. BRUCE B. McKAY for appellant.

Messrs. YOUNG & LUETHI for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

This is an appeal by defendant from a judgment rendered in an action brought by appellee to recover damages resulting from the alleged negligence of defendant, and the negligence of one of its employees, a co-employee of plaintiff. The right of action for the alleged negligence of the co-employee was based upon the provisions of the act found in the Session Laws of 1901, page 161. The evidence disclosed that plaintiff's spinal column was injured, which resulted in the complete paralysis of all that portion of his body below the injury. There was a verdict and judgment in his favor, for the sum of ten thousand dollars.

The plaintiff was in the employ of defendant, his duties being to draw cars loaded with coal from a point known as the "parting," in an entry or passage-way in a coal mine operated by defendant, along a track leading to the bottom of a pit or shaft, and to draw empty cars from this point to the parting. The track along which the cars were drawn from the parting had a considerable descending grade from that point.

One Leonard Wattelet was also employed by the defendant as a driver to bring cars loaded with coal along the track beyond the parting, and place them thereon. As plaintiff was going from the pit or shaft to the parting with a trip of empty cars, two cars loaded with coal which Wattelet was bringing along the track to the parting were lost control of by him, and instead of being stopped upon the parting, as they should have been, escaped and ran down over it, and collided with the cars which plaintiff was bringing up the entry. The injuries sustained by plaintiff were caused by this collision.

The complaint, so far as material to consider, in

addition to alleging the foregoing facts, alleged, in substance, that it was the duty of the defendant, and in particular, the duty of its employee, Wattelet, at all times, while bringing loaded cars along the track beyond the parting, to use reasonable care, skill and diligence to keep the same under such control as would enable them to be stopped at the parting, and when the cars had reached that point, to stop the same and effectually secure them so as to prevent them from running down and along the track leading from the parting to the bottom of the pit or shaft; that it was the duty of the defendant to use reasonable care and diligence in providing a safe place for plaintiff to work, by keeping the entry or passage-way in which he was employed free and clear from obstructions, and in providing safe, necessary and proper appliances for stopping the loaded cars brought to the parting; and for effectually securing the same, so as to prevent them from being lost control of, and from running down and along the track over which plaintiff was employed to move cars; but that defendant, disregarding its duty in these respects, had negligently failed to use reasonable care and diligence in the performance of these duties; that the employee, Wattelet, while in the course of his employment, by reason of a failure on his part to exercise reasonable care, skill and diligence, negligently failed to keep a loaded car, which he was bringing along the track to the parting, under such control as to enable him to stop it at the parting, and negligently failed to stop the car when it had reached the parting, and also negligently failed to secure the same effectually, so as to prevent it from running down and along the track over which plaintiff hauled cars, by reason of which negligence, and the negligence of defendant in the particulars above stated, the car was lost control of by Wattelet, ran down the track, and collided with

empty cars which plaintiff was then bringing up to the parting. The parting, as it is termed in the complaint, consisted of a side-track connecting with the main track at each end. Loaded cars brought along and over the track from beyond the parting were stopped on the main, opposite the side, track. Empties brought up were shifted to, and stopped on, the latter.

Both parties appear to agree that the complaint was drawn upon the theory that defendant was guilty of negligence at common law, and was also liable under the Co-Employees' Act, above referred to.

The defendant filed a motion to require plaintiff to separately state, and separately number, in separate counts, the alleged negligence of the defendant at common law, and the alleged negligence of its employee, Wattelet, for and on account of which the plaintiff sought to hold the defendant liable. This motion was denied.

Our code provision, relating to the joinder of causes of action in the same complaint, provides that they must be separately stated. So far as a defendant is concerned, he has the undoubted right to insist that the provision requiring different causes of action united in the same complaint to be separately stated, shall be observed, and failure to sustain a motion to that effect, interposed in apt time, is prejudicial error. — *Hall v. Cudahy,* 46 Colo. 324. But that is not this case.

The liability of the defendant was predicated either upon its negligence, or the negligence of a fellow-servant in the employ of the defendant. The negligence of one or the other, or both, according to the averments of the complaint, if sufficient in these respects, caused the injuries for which plaintiff claimed the right to recover. In *Vindicator C. G. M. Co. v. Firstbrooke,* 36 Colo. 498, we held that an ac-

tion for personal injuries resulting from the alleged common-law negligence of an employer, and the negligence of his employee, based upon the Co-Employees' Act, stating different grounds of liability for the same ultimate act, stated but one cause of action. There is no provision of the code requiring a plaintiff to state in separate counts the several distinct matters upon which he relies to support a single cause of action; consequently, in an action for personal injuries, common-law and statutory negligence may be stated in the same count, so long as the acts upon which the plaintiff relies produced the one injury and the one damage constituting the subject-matter of the action.—*White v. St. L. & M. R. R. Co.*, 101 S. W. (Mo.) 14. That is this case, and the motion under consideration was properly overruled.

The defendant also filed a motion to strike certain portions of the complaint, which appears to have been based upon the ground that the parts of the complaint thus attacked were mere surplusage, were not traversable, and did not state a cause of action. This motion was denied. In this ruling there was no error. A complaint must be considered as a whole. Certain averments standing alone may not state a cause of action, but when considered in connection with other averments, they may, or do; and as the portions of the complaint attacked by the motion were proper to consider in determining whether or not the complaint stated a cause of action, the court very properly denied the motion.

The defendant also moved for an order requiring the complaint to be made more specific in the following particulars: With respect to providing a safe place for plaintiff to work, in keeping the entry or passage-way free and clear from obstructions, and in providing safe, proper and necessary appliances for stopping cars, as alleged in the complaint. The ground of the motion appears to be that the com-

plaint did not inform the defendant as to what appliances it had failed to provide. The defendant certainly knew what appliances it had provided for the purposes named. It cannot complain of the action of the court in refusing to require the plaintiff to specifically state what appliances it had failed to furnish or supply, when it must be presumed that it knew what appliances it had for stopping, securing and controlling its cars.

The defendant also filed a motion to require the plaintiff to elect upon which cause of action he would proceed, which was denied. On the authority of the Firstbrooke case, *supra,* this ruling was proper, for the reasons stated in that case, and it is unnecessary to re-discuss the question here.

After the rulings on the various motions mentioned, the defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, which was overruled. It is contended that the demurrer should have been sustained, because a complaint in an action for negligence is not sufficient which merely alleges the duty of the defendant and a breach thereof. Generally speaking, this is correct. The facts or circumstances from which the law will imply that the duty which the law imposes has been violated should be stated. —*Denver Cons. E. Co. v. Lawrence,* 31 Colo. 301. The complaint complies with this requirement. It does not stop with the allegations of duty and a breach thereof. In addition, it alleges, when considered as a whole, although, perhaps, somewhat inartificially, that the defendant negligently failed to exercise reasonable care and diligence in providing safe, proper and necessary appliances for stopping the loaded cars brought to the parting, so as to effectually secure and prevent them from being lost control of and from running down and over the track which plaintiff used in the course of his em-

ployment. We think these facts show a legal liability on the part of the defendant, and therefore conclude that the demurrer was properly overruled, for the reason that the facts stated show a breach of the duty which the defendant is charged with violating.

The defendant filed an answer, denying negligence, and alleged assumption of risk and contributory negligence on the part of the plaintiff. To this answer the plaintiff filed a replication, denying the affirmative defenses. .

The loaded cars were hauled to the parting by a mule driven by Wattelet. The mule became unruly as the parting was approached, and instead of holding back, continued to pull so that the driver lost control of the cars, and they ran down and collided with the empties being brought up by plaintiff.

One of the means employed to control loaded cars was by sprags (short pieces of iron pipe or wood), which the driver thrusts between the spokes of the wheels, which, when they come in contact with the body of the car, act as a brake. Wattelet testified that when the mule became unruly, at the time under consideration, he tried to find sprags, but could not; that he went in front of the cars and tried to turn the mule, but failed; that he had to slide along in front of him; that he tried to kick a block in front of the cars, but it had become tightened, and he could not move it; and that he then threw a slab in front of the wheels, but it failed to stop the cars.

On behalf of the defendant it is contended that the evidence was not sufficient to establish negligence on the part of defendant, or its employee, Wattelet, with respect to the sprags; that the evidence on this subject was without the pleadings and issues; that the court erred in admitting testimony relative to equipment necessary to control the loaded cars while being moved towards the parting; in admitting opinion evidence on this question; and in other re-

spects bearing on the question tending to prove that defendant was negligent in failing to provide proper appliances to control the loaded cars when on the way to, and at the parting. We do not deem it necessary to enter into a discussion of these questions in detail, in view of the character of the testimony bearing on the subject of the block referred to by the witness Wattelet. This is known as a stop or bumper block, and is a piece of timber, 4 x 4, bolted to one of the rails or ties, so that it can be moved or dropped across the rails in front of an approaching car. It is a safety device used generally, at a parting, by operators of coal mines, in addition to sprags, to stop a car or throw it from the track, after it reaches the parting, in case the sprags are insufficient to stop it because of its momentum, or the action of the mule, in drawing it, and thus prevent the car running down the track where, as in this instance, the grade from the parting is descending. A block had been provided, but the burr on the bolt on which it worked became so tightened that it could not be moved. It stands undisputed that this defective condition had existed for about two weeks. No other appliance had been supplied to take its place. It was put there originally, as a witness for defendant says, to prevent accidents. There is testimony that the employees of defendant whose duty is was to keep the block in repair, had been notified of its condition. The proper agent of the defendant to whom to give notice that the block was out of repair was either the pit or driver boss. A witness on behalf of the defendant, who was pit-boss at the time plaintiff was injured, after testifying with respect to his duties, stated that he was acquainted with the condition at the parting. Neither he nor any one else says that the block was not out of repair, nor does any witness say that the company did not have notice that its condition was defective. No question appears to

have been raised below on this score. The defendant did not request any instruction on this point. Plaintiff testified that he was not aware of the defective condition of the block. This statement is not controverted. It appears that he did not assist in stopping the loaded cars at the parting; that it was no part of his duty to inspect the block; that it was the duty of the drivers bringing loaded cars to the parting to stop them at that point; that plaintiff's duty was to haul the cars from the parting to the shaft; that while one of the purposes of the bumper block was to hold loaded cars at the parting after unhitching the mule, that it was also customary to stop them at that point with sprags, or sometimes with a slab; that this means had been employed for some time prior to plaintiff's injury; that Wattelet was not the only driver engaged in hauling loaded cars to the parting; and that plaintiff would not have occasion to use or move the block, unless it was used by the drivers to hold the cars at that point; so that it does not appear the duties of plaintiff were such that he must necessarily have had knowledge of the fact that the block at the parting was out of repair. Wattelet testified that had the block not been out of repair, he believed he could have stopped the cars. It was a matter of common occurrence for mules employed in the mine to become unruly. The employees of defendant whose duty it was to repair the block knew this.

Our attention has been directed to the testimony of a witness on behalf of the plaintiff, who, in answer to the question upon whom devolved the duty of inspecting the block and keeping it in repair, answered: "It was the driver's place to see—if the block was in bad condition, to report to the pit-boss." From this it is urged that plaintiff must have known of the condition of the block, but what driver the witness referred to is not stated. The natural inference

is that it would be the driver whose employment required him to use the block to stop a loaded car. Wattelet, in answer to a question as to what was wrong with the block, stated: "Why, we had been working it back and forth all the time, and it had got tightened up, so you couldn't move it; the burr got tightened up so you couldn't move it." He also stated that he had either notified the driver-boss or pit-boss that the block was out of repair, and later stated, in substance, that "we" had notified some of the company men who were in the habit of repairing and putting in blocks, of its condition. The witness does not state to whom he referred by the use of the pronoun "we." It might have included the plaintiff, but the logical inference, from all the facts, would be that he referred to the drivers bringing loaded cars to the parting.

It appears that plaintiff removed whatever means were employed in holding the loaded cars in place on the main track, and if the block was out of repair so that it could not be used, he had no occasion to use it, but would only remove such other things as were employed in its place.

Wattelet was asked if he had notified a driver-boss, by the name of Butcher, that the block was out of repair. His answer was: "I don't know that we had; I don't think so as to the block individually, I had already told him about the blocks—." Here the witness appears to have been interrupted by an objection by counsel for the defendant, and did not complete his answer. We do not think this establishes that Wattelet did not notify the proper employees of the defendant company, in view of the fact that later he answered positively that he had given notice of the "condition of the bumper block to the bosses." None of this testimony is controverted. True, the witness stated he had told the timbermen about the block; but this is of no material

moment, even if they were not the proper parties to notify, when it appears that he had also notified the representatives of the defendant whose duty it was to keep the block in repair.

It certainly is established, beyond all controversy that the cars escaping from the parting were the cause of plaintiff's injury. Giving the testimony the most liberal construction possible, in favor of the defendant, its liability depended upon three questions: (1) Had the employees of defendant, whose duty it was to keep the bumper block in repair, been notified of its defective condition? (2) Did plaintiff know of its defective condition, or should he, by the exercise of reasonable care, have known of its condition? (3) Was the injury the result of unavoidable accident?

Bearing on these questions, the court instructed the jury to the effect that it was the duty of the defendant to exercise reasonable care and diligence in providing safe and necessary appliances for operating the cars, and for stopping them at the parting; that a failure to do so was negligence; and that if it was the duty of the driver or pit-boss to furnish such appliances, want of ordinary care on his part in this respect would be negligence for which the company was responsible; that if plaintiff knew, or by the exercise of reasonable care should have known, the condition of the mine where he was employed, then he assumed the risk of injury incident to such condition, and could not recover; and that if neither the defendant nor its employee, Wattelet, was guilty of negligence, approximately causing the injury of plaintiff, but that his injury happened without any negligence, then it was the consequence of a mere accident for which the company would not be responsible. The testimony to which these instructions necessarily related was not only sufficient to sustain a finding embraced in the general verdict re-

turned, that the defendant was responsible for the injury, basing it alone on the material questions involved with respect to the bumper block, but was of that character that the verdict could not have well been otherwise, so that even if the court erred in admitting testimony with respect to the sprags, it was error without prejudice.

It is urged that the court erred in permitting a witness to give his opinion as to whose duty it was to examine and keep the stop-block in repair. This statement was one of fact, and not merely an opinion. It is also urged that it was error to permit testimony to the effect that a stop-block was necessary at the parting. The defendant had recognized the necessity of such an appliance by placing it at the parting for the express purpose of preventing accidents. The evidence discloses that such a safety device was usually employed in coal mines, to protect employees, and nothing had been provided to take its place. This testimony is not disputed, and the evidence objected to could not have prejudiced the defendant.

Testimony was admitted to the effect that the mule driven by Wattelet had a sore tail. This, it is claimed, was not proper under the pleadings. Granting this to be correct, it is clear from the testimony of the witness testifying on the subject, that the condition of the mule's tail did not cause, and could not have caused, the mule to become unruly, and hence this testimony, although incompetent, was non-prejudicial.

Plaintiff was a minor, and complaint is made that his father, by whom the suit was brought, as next friend, was permitted to testify what expenses he, the father, had incurred in the cure of his son, the contention being that in this action the son could not recover for anything the father had paid or incurred on this account. The son testified that he had incurred these expenses, but as he had not paid

them, and was a minor, it is insisted that they were not proper subject of damages, because he was not legally competent to incur them. Even if the father's testimony is susceptible of the construction contended for, it could not have prejudiced the defendant. From the evidence and the instruction on the subject, the jury could not have been misled into awarding for expenses anything more than the amount which plaintiff testified he had incurred. The fact that he was a minor, but had not paid the expenses incurred in trying to cure his injury, did not preclude him from recovering therefor from the defendant, when they had been incurred by him. The right of an infant to avoid contracts because of his minority is a personal privilege which can only be taken advantage of by the infant himself, and not by third parties collaterally.—16 Ency. of Law, 296; *Doane v. Covel,* 56 Maine 527; *Holmes v. Rice,* 45 Mich. 142; *Alsworth v. Cordtz,* 31 Miss. 32.

It is contended by counsel for defendant that the action should fail because joint negligence of the defendant and its employee was not established, and for the further reason that it does not appear that plaintiff's injuries were approximately caused by any negligence charged in the complaint. The action was against the defendant alone, not against it and Wattelet jointly. The complaint charged negligence of both, and proof of the negligence of the defendant was sufficient to support the action. In making this statement, however, we must not be understood as indicating that if the action had been a joint one against the defendant and Wattelet, that it would have been necessary to prove joint negligence. The question is not involved.

In support of the claim that plaintiff's injuries were not caused by any negligence charged in the complaint, two propositions are advanced:

(1)    That the proof is a block was provided, but that it was out of repair. The charge of negligence on this score was, the defendant had failed to provide proper appliances. Under the circumstances, this charge was supported by proof that those furnished were so out of repair as to be useless. The defendant had knowledge of this fact. The gist of the allegation was proved, and the variance was not material when it is apparent the defendant was not misled or prejudiced.—22 Ency. Pl. & Pr., 566; *Chicago & G. T. R. Co. v. Spurney,* 64 N. E. (Ill.) 302.

(2)    That there was no proof of an actual collision of the mules or the cars. The loaded cars escaped and ran down the track. Clearly, plaintiff would not have been injured unless there had been a collision.

Numerous errors are assigned upon instructions given and refused. Many of the questions thus presented are eliminated by the disposition of those preceding. Error is assigned to an instruction given because it did not confine the jury to the consideration of the negligence charged in the complaint. This instruction stated, in effect, that the action was to recover damages sustained by plaintiff and claimed to have been caused by the escape of loaded cars, and if it appeared from the evidence that the escape of these cars was due to the negligence of defendant or its employee, Wattelet, and that, as a direct result of such negligence, the plaintiff was injured, then the verdict should be for plaintiff, unless it appeared from the testimony that plaintiff assumed the risk of his injury, or was guilty of negligence which contributed to it. The claim of plaintiff, as stated in his complaint, was, that he was injured by the escape of loaded cars which resulted from the negligence of the defendant and Wattelet; consequently, the instruction, by the very language employed, limited

the jury to a consideration of the negligence as charged in his complaint.

But, aside from this, the court, by other instructions given, advised the jury that the burden of proof rested upon the plaintiff to establish that the wrong of which he complained was committed in manner and form charged in his complaint; that only such negligence could be proved as was therein alleged; that it was incumbent upon the plaintiff to establish that defendant was negligent in the particulars thus specified, and that such negligence was the proximate cause of his injury. Surely, these instructions expressly limited the jury to the consideration of the negligence which plaintiff had specified in his complaint. Instructions must be considered as a whole.

Error is also assigned upon a part of an instruction, to the effect that if it appeared from the evidence the appliances provided for the purpose of securing the cars at the parting were not such in number or character as a reasonably prudent person would consider safe and necessary, the defendant was guilty of negligence. The particular objection urged is, that the jury were not required to determine whether the defendant had exercised ordinary care in providing appliances to prevent a car escaping from the parting. When the part of the instruction preceding is considered, it is apparent the objection urged is without merit. The jury, by this part of the instruction, were advised that defendant was not bound to provide absolutely safe appliances, but it was its duty to exercise reasonable care and diligence in providing safe and necessary appliances for operating its cars, and stopping and securing them at the parting so as to prevent their escape. An instruction must be considered as a whole.

With one exception the errors assigned and argued upon the other instructions given or directed

to those we have considered, are so manifestly without merit that they will not be noticed in detail.

Plaintiff was, as stated, a minor. At the time of his injury he lacked about nineteen months of attaining his majority. His expectancy when injured was nearly forty-three years. By an instruction given, it is contended, the jury were permitted to assess damages for loss of earning capacity during his minority. The instruction was to the effect that if the jury found in favor of plaintiff, he was entitled to recover such sum as would fairly and reasonably compensate him for bodily and mental pain and anguish suffered as the result of his injuries; for the loss of his earning capacity; and also such sum as he might have incurred or expended in endeavoring to be cured of his injury, not exceeding, however, the sum of $750.00 on account of this last item. The objection to the instruction was that it permitted the assessment of damages not proper under the evidence. It will be observed that the instruction embraces three items of damages. Plaintiff was clearly entitled to recover for mental and bodily pain, and also for expenses incurred in endeavoring to effect a cure. Unless, in an appropriate way, an exception to an instruction is made in the court below, so that its attention is directed to the error of law complained of, the instruction will not be considered on review. This court will not review instructions which the trial court was not given an opportunity to correct. The objection interposed did not point out the item of which complaint is now made; in other words, it was general, on the subject of damages; hence it does not avail as against an instruction which contains two or more independent and distinct propositions of law, some of which are right, because it fails to point out that which is incorrect from that which is correct.—*Beals v. Cone,*

27 Colo. 473; *City of Pueblo v. Timbers,* 31 Colo. 215; *Hasse v. Hering,* 36 Colo. 383.

In any event, defendant has not been seriously prejudiced by the instruction in question.

Plaintiff has filed with the clerk of the district court a remittance of five hundred dollars on the judgment. This sum will cover any amount which might have been awarded by the jury for loss of earning capacity before the plaintiff attained his majority, and the error of the court, if any, was thus cured.

It appears that when plaintiff was injured he was standing on the chain and bumper at the front end of the car he was returning to the parting. Error is assigned upon the refusal of the court to give an instruction to the effect that if plaintiff had the choice between riding inside of one of the empty cars, and riding on the bumper and chain outside, and that the former was less hazardous than the latter, and plaintiff knew that fact, then he assumed the additional risk of riding outside in the manner he did. An instruction was also requested to the effect that if the evidence discloses the plaintiff was negligent in standing upon the chain and bumper on his return trip, instead of standing in the front car, and that such negligence contributed to his injury, the verdict should be for the defendant, which was refused. Both these requests were properly denied. Plaintiff testified that the mule he was driving was not well broken; that it did not know "gee" and "haw"; that when it turned a corner he (the plaintiff) had to be around in front in order to turn the mule, and that he had been ordered by the driver boss to ride on the bumper and chain in order to break the mule; and that the reins or lines were not of sufficient length to permit him to ride elsewhere than in front of the car and guide the mule by means of the reins. This testimony is not controverted. It

does not appear that plaintiff was incurring any unusual or extraordinary danger which he should have reasonably anticipated by riding in front outside the car, in order to discharge his duties properly. An employee is generally excusable for obeying orders in and about his employer's business when such orders are given by one in authority over him as a representative of his employer, unless the danger incurred by such obedience is so manifest that a prudent person would not obey even under the penalty of being discharged.—*Colo. Midland Ry. Co. v. O'Brien*, 16 Colo. 219.

Instructions were refused which defined "proximate cause," and which stated, in substance, that if it appeared from the testimony that the mule which Wattelet was driving refused to obey its driver, and acted in an unusual manner, and that such unusual actions on the part of the mule could not have been anticipated by a reasonably prudent person in the exercise of ordinary care and foresight, and that except for such unusual actions on the part of the mule, injury to the plaintiff would not have occurred, then the verdict should be for the defendant. If the cars were allowed to escape from the parting through the negligence of the defendant, in failing to provide a proper stop or bumper block, then the defendant was liable for the injury to the plaintiff, unless such injury was occasioned by an independent, intervening agency. This, it is claimed by counsel for the defendant, was the case as the result of the action of the mule, and hence, they argue that the instruction relating to the action of the mule should have been given. We do not regard this contention as tenable. Defendant's own witnesses, some of whom were charged with the duty of keeping the stop-block in repair, and knew that it was defective, testified that it was a frequent occurrence for mules to act contrary, and refuse to hold back. With knowledge

of this character, it was incumbent upon the defendant to make reasonable provision for the protection of its employees against the unruly action of the mules employed in its mine. Had the block been in repair, the loaded cars would not have escaped. notwithstanding the action of the mule. So that, although its stubbornness may have contributed to plaintiff's injury, the defendant is not relieved from its failure to keep the block in repair, when it appears that notwithstanding the conduct of the mule, the cars would have been stopped at the parting but for the negligence of the defendant with respect to the bumper block. The court, however, had already instructed the jury to the effect that if neither the defendant nor Wattelet was guilty of negligence approximately causing plaintiff's injury, but that his injury happened without any negligence, and was the consequence of a mere accident, the plaintiff could not recover.

This disposes of the questions urged upon our attention by counsel for appellant which we deem it necessary to consider; and as there does not appear to have been any error committed which would justify a reversal, or that such as were committed have been cured, or are not subject to review, the judgment must be affirmed.

The only fairly debatable question on the merits of the case was, whether the plaintiff had assumed the risk of injury from the defective condition of the stop or bumper block. This question was squarely submitted to the jury, and as the evidence bearing thereon was of such a character that it must necessarily have been resolved in favor of plaintiff, we feel justified in assuming that it was.

In affirming the judgment, we do not wish to be understood as holding that the trial court would have been justified in directing a verdict in favor of the plaintiff, but that under the instructions given and

the testimony in the case, it is clear the verdict must have been based upon testimony the relevancy and competency of which is not open to question, and was amply sufficient to sustain the verdict returned. For this reason the alleged errors committed in the introduction of testimony or the giving or refusal of instructions, could not have influenced the verdict. Absolute perfection in the trial of a case is rarely attained; but where it is apparent that the errors of which the defeated party complains did not prejudice his rights, the verdict and judgment should not be disturbed.

The conclusion is the same as announced in the original opinion, but as the questions involved have been more fully discussed in this than in the original opinion, it is withdrawn and this filed in lieu thereof.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE HILL concur.

Decided March 6, 1911; rehearing denied May 1, 1911.