Walling, Judge.
Tliis action was brought by appellee to recover damages by reason of the killing and maiming of a nunffier of appellee’s cattle, on the track of appellant’s railroad, it being alleged that the cattle were so killed and injured in consequence of the negligent operation of one of appellant’s trains. The trial was before the court and a jury, and resulted in a verdict for the plaintiff, upon which the court subsequently gave judgment. Appellant’s counsel, in their brief, insist that the judgment should be reversed by reason of errors alleged to have occurred in the trial of the cause in these particulars. First, because the *497 court denied the defendant’s motion for a non-suit, at the conclusion of plaintiff’s evidence in chief, and refused to direct a verdict in favor of the defendant, upon all of the evidence; and, second, because the court did not instruct the jury as requested in defendant’s request numbered seven, but did give im struction No. 11, which was a part of the court’s charge. The argument of appellant’s brief in support of the objections included under the first head is based upon the one proposition, that there was no evidence of negligence on the part of the defendant to charge it with legal responsibility for the accident, which was the basis of the action. No brief has been filed on behalf of appellee. It is not questioned that twenty-two cattle belonging to the plaintiff were killed and injured by one of appellant’s trains, and there is no controversy as to the extent of the damage sustained.
The trial took place about nine years after the event which gave rise to the action. One of the witnesses called by the plaintiff was the engineer, in the employ of the defendant, who had charge of the locomotive of the train by which the cattle were killed and injured, and he gave the following testimony. The train consisted of either two or three cars, besides the engine, and was running eastward, at a speed of twenty-five or twenty-seven miles an hour, at the time of the accident, which occurred at about nine o’clock in the evening of May 24th. Immediately after the engine had rounded a certain curve, the engineer discovered the cattle on the track, those nearest the engine being about thirty-five to forty-five feet distant from the engine, when it was on the straight track immediately east of the curve. He *498 could not see the cattle sooner, because of the curve in the track, which prevented the headlight from illuminating the track and right of way for any considerable distance. He immediately blew the whistle, and employed every means of stopping the train, and the engine stopped about seventy to seventy-five yards from its position, when the cattle were first in the engineer’s view. The first of the animals was struck thirty-five or forty-five feet from the position of the engine when they were first seen by the engineer. After the train was brought to a standstill, the engineer saw a number of the cattle, which had been either killed or injured, lying near the track, along the entire train’s length, from about the point at which, as'he said, the first was struck. There were also a large number of cattle on the track ahead of the engine, and upon the right of way. That particular train, at the speed at which it was traveling, On a down grade, could have been stopped ordinarily within a distance of seventy to seventy-five yards, and it was so stopped, after the engineer first saw the cattle.
From this brief statement of the testimony of the engineer, Williams, it is certain that, so far from sustaining the plaintiff’s contention that the cattle were killed and injured through the negligence of the defendant, it indicated care and caution in the operation of the train, under the circumstances detailed by him. There is no doubt, moreover, that the burden was on the plaintiff to prove that the loss sustained was the result of the defendant’s negligence, and, failing in such proof, she was without a cause, of action. This burden was not shifted by mere proof that plaintiff’s cattle were killed and injured by the *499 defendant's train. Chicago etc. Co. v. Church, 49 Colo., 582.
But the question whether the issue of negligence ought to have been submitted to the jury did not necessarily depend upon the testimony of a single witness and its accompanying inferences. The plaintiff, having offered the engineer as her witness, could not impeach his veracity; nevertheless, she was not precluded from producing other witnesses in support of her case, whose testimony conflicted with his in certain essential particulars. Pacific etc. Co. v. Van Fleet, 47 Colo., 401. It was the just conclusion from the engineer’s testimony, that the train was brought to a stop at practically the earliest possible moment, after the cattle could have been seen by him by the exercise of any reasonable degree of diligence. At the same time, the conclusion was inseparable from the facts, as stated by him, among others, that he first saw the cattle immediately after the engine had passed the curve, and that he stopped the train within approximately seventy-five yards of the position of the engine when they were so discovered. If there was other testimony before the jury, which tended to establish a different condition of facts, leading to an opposite conclusion, and from which the jury might reasonably have inferred that the accident could have been prevented by ordinary care on the part of defendant’s employees, it was proper to leave the determination of the facts, as well as the just inferences from the facts found, to the consideration of the jury.
“When the facts, or the inferences to be drawn therefrom, are in any substantial degree doubtful, or fair-minded men might reach different conclu *500 sions from the facts, the only proper rule is to submit the question to the jury for determination.” Denver etc. Co. v. Wright, 47 Colo., 366.
Other witnesses on behalf of the plaintiff, one of whom was the plaintiff’s husband, and another an employee in charge of the farm whereon the cattle were pastured, were at the scene of the accident on the morning after it occurred, and they testified to the effect as next hereafter stated. Between 1,100 and 1,500 feet from the most easterly point of the curve mentioned in the engineer’s testimony, twenty-two head of plaintiff’s cattle were found on the defendant company’s right of way, four or five of them dead, and eight or nine so badly crippled and maimed, that they were of necessity forthwith killed by the railway company’s employees. Nine others were more or less seriously injured. The thirteen cattle, killed by the train and the defendant’s section men, were found, according to the statements of plaintiff’s witnesses last mentioned, strewn along the track, between points eleven hundred feet and fifteen hundred feet east of the most easterly point of the curve. The distance from the curve to the nearest animal was stated to have been about eleven hundred feet, by one, and twelve hundred feet, by others. They agreed that the one found farthest east was about fifteen hundred feet from the curve— the distances in all cases being approximations of the witnesses, not verified by actual measurements. One of these witnesses testified that, where the dead and maimed cattle were found, there was much hair and blood on the track, and other marks on the ground, indicating that the cattle had been there struck and dragged along by the train. He said that *501 these physical indications were upon and near the track,' commencing about eleven hundred feet, and extending to a point about fifteen hundred feet, east of the east end of the curve. The defendant called as a witness the section foreman, who had arrived at the place where the cattle were found, earlier than plaintiff’s witnesses mentioned, and who described the general situation and condition of the 'dead and maimed animals, without substantial variance from the statements of plaintiff’s witnesses, except that the foreman declared that the animals, found dead, or in such condition that they must be killed, were strewn along near the track, between two hundred and fifty and five hundred feet distant from the east point of the curve. The proof showed that the track was perfectly straight for the distance of more than fifteen hundred feet east of the east point of the curve. There was other evidence, having greater or less materiality to the issue of the alleged negligence of the defendant, which will not be discussed, for the obvious reason that it is not our province to pass upon the weight of the evidence.
It can scarcely be questioned that the circumstances detailed in the testimony of'plaintiff’s witnesses, who were at the locality of the accident on the morning after it occurred, were inconsistent with the testimony of the engineer, that the first of the cattle was struck at a point approximately forty-five feet east of the position of the engine when it completely rounded the curve, and the remainder at intervals of a few feet, until the'train was stopped, whether it was stopped within the distance of seventy-five or one hundred yards. There was testimony to the effect that the train could have been brought to a full *502 stop within the distances last mentioned. It may be remarked here that the testimony of the section foreman, as to the places where the cattle were found on the morning after the accident, while far from agreeing with that of the plaintiff’s witnesses to the same point, had no tendency whatever to corroborate the engineer’s recollection of the locality of the accident with reference to the curve in the track; and that appears to be true generally of the testimony introduced by the defendant bearing on that subject. The conflict in the evidence above referred to involved not only a matter of fact; but also the legitimate inferencé to be drawn from the circumstances of tha accident.
That these cattle were killed and injured by the engineer Williams ’ train was sufficiently established by proof, and that fact does not appear to be controverted. Beyond that, there was evidence from which the .jury might have found that they were struck at a place where the track was perfectly straight for many hundred feet east of the approaching train, and in circumstances justifying the inference that they could, by the exercise of ordinary care, have been discovered in time to prevent the accident by stopping the train, and we must presume from the verdict that they so found. Our conclusion is that there was 'competent evidence before the jury, which required the submission of the issue of negligence to their determination. Railway Co. v. Charles, 36 Colo., 221; Railway Co. v. Boyd, 44 Colo., 119.
The defendant requested the court to give the following instruction:
“Instruction No. 7, requested by defendant.
The jury are instructed that, if they believe that *503 any witness lias wilfully testified falsely as to any material point in the ease, they are at liberty to disregard his entire testimony, except insofar as it is corroborated by other witnesses, or by facts or circumstances proved in the trial. ’ ’
This annotation was made upon the written request, and signed by the trial judge: ‘ ‘ Amplified and given as amplified. ’ ’ The bill of exceptions recites: ‘ ‘ Said instruction was amplified and given as amplified; and to the refusal of the court to give said instruction number seven requested by defendant in the' form as requested, defendant then and there by its counsel duly objected and excepted.” Instruction 11, given by the court to the jury, contained several distinct propositions. The first was that the jury were the sole judges of the credibility of the witnesses. Following that, the jury were told that in determining the weight to be given to the testimony of any witness, they had a right to consider his interest in the result, his relation to or connection with the party for whom he testified, etc. The last part of the instruction was in this language: “And if •you believe that any witness has sworn falsely to any material matter in the case, then you are at liberty to disregard the entire testimony of such witness, except insofar as the same shall be corroborated by the testimony of other credible witness or witnesses.” A general exception was noted by defendant to the giving of instruction 11. It is not claimed that any of the propositions included in that instruction were incorrect, except the sentence last above quoted. Consequently, by the well settled rule, that .particular statement cannot be reviewed upon the general exception to the entire instruction.
*504 “Unless, in an appropriate way, an exception to an instruction is made in the court below, so that its attention is directed to the error of law complained of, the instruction will not be considered on review. This court will not review instructions which the trial court was not given an opportunity to correct.” National Fuel Co. v. Green, 50 Colo., 307, 324. Also Beals v. Cone, 27 Colo., 473; City of Pueblo v. Timbers, 31 Colo., 215; Hasse v. Herring, 36 Colo., 383. It is true that the last sentence of instruction 11, as given, stated the law incorrectly, and that defendant’s requested instruction numbered seven was right, and should have been given. Of course, the trouble with the instruction given was that the jury were told that, if they believed that a witness had sworn falsely to any material matter of fact, they were at liberty to disregard the entire testimony of the witness, except so far as corroborated, without reference to whether or not the false swearing was intentional or corrupt. Gottlieb v. Hartman, 3 Colo., 53; Last Chance M. & M. Co. v. Ames, 23 Colo., 167, 172; Ward v. Ward, 25 Colo., 33, 39.
The court did not refuse to give the instruction • as requested by the defendant, but, on the contrary, evidently intended to make it a part of the general instruction touching the credibility of witnesses. There is no reason to suppose that he deliberately misled the jury, in the face of numerous decisions of the supreme court announcing the correct rule, or that he would have declined to insert the omitted word “wilfully” in the last sentence of the instruction given, if his attention had been called to the omission. In the circumstances presented, we think that it was the duty of the defendant to specially di *505 rect tlie attention of the court to the error in the form of the instruction given, and as it does not appear that that was' done, the appellant is not in a position to insist upon its exception based on the failure to give its requested instruction, in the language of the request. This conclusion is the more satisfactory, because there is little reason to suppose that-the defendant was prejudiced by the failure to give the instruction requested, in addition to instruction 11, no available exception having been taken to the latter.
There are no other matters urged by counsel for the reversal of the judgment, and it is affirmed.

Affirmed.