64   637
74   412

YAZOO AND MISSISSIPPI VALLEY RAILROAD COMPANY *v.*
BRUMFIELD & BRUMFIELD.

1. RAILROAD COMPANY.   *Liability for killing mule.   Right of engineer to abandon engine.   Liability for injury inflicted on animal.*
   An engineer in charge of a train when called on to choose between his own safety and that of a mule has a right to prefer his own ; and if he stand at his post as long as he can do anything effectual toward stopping his train that is about to overtake a mule running on the track, and then abandons his engine when his own safety seems to require it, and the mule is killed, the railroad company is not liable in damages because of such action of the engineer.

2. SAME.   *Failure to stop train.   Duty of engineer on seeing animals.   Case in judgment.*
   It is not the duty of an engineer to stop his train simply because he sees animals near the railroad track, unless appearances reasonably indicate danger of such animals going upon the track, and it is error for a court to instruct a jury that a mere failure to stop a train while plaintiffs' mules " ran along the track and on the road-bed for a distance of three hundred and twenty-five yards," and were seen by the engineer " at a distance of six hundred or seven hundred yards," renders the railroad company liable in damages for killing such mules if " the train could have been stopped short of the place where the killing occurred."

APPEAL from the Circuit Court of Yazoo County.

HON. T. J. WHARTON, Judge.

Brumfield & Brumfield brought this action against the Yazoo and Mississippi Valley Railroad Company to recover the value of two mules killed by the running of its train.

The train was running at a speed of twelve or fifteen miles per hour. It emerged from a deep cut on a down-grade, and, when it had gone a short distance, two mules were seen by the engineer to run toward the track, and, having reached it, they began to run down the side of the track in a frightened manner. He immediately reversed his engine, blew the stock alarm, and the brakes were put on. Just before the train reached a trestle the mules got on the track, and one of them was struck and thrown under the wheels of the car and killed, and the other ran ahead in the middle of the track and fell through the trestle and was killed. The engineer, apprehending danger from the situation, jumped from the engine. The evidence as to the distance the mules ran by the side of the track and then on the track before being struck and the distance from which the mules could have been seen by the engineer was conflicting.

The court instructed the jury for the plaintiffs as follows:

" 1. The court instructs the jury that, if they believe from the evidence that at the time the engineer jumped from the train. if he had remained at his post of duty the killing of the mules would have been averted by the stopping of the train they will find for the plaintiffs."

Another instruction for the plaintiffs was as follows:

" The court instructs the jury that if the mules ran along the track and on the road-bed for a distance of three hundred and twenty-five yards, and the engineer could and did see the mules at a distance of six hundred or seven hundred yards, and the train could have been stopped at any point short of the place where the killing occurred, then the law is for the plaintiffs."

The verdict and the judgment were for the plaintiffs, and the defendant appealed.

*W. P. & J. B. Harris,* for the appellant.

1. The first instruction should not have been given. It had relation to a circumstance the effect of which could not even be conjectured. There was no evidence that the engineer at the time he abandoned his engine had left anything undone which would stop the train. The evidence is all the other way, and without a fact or circumstance tending in any degree to support the idea that he had not. The *opinion* of Wilson is not evidence, it is worse than haphazard. The act of jumping from the engine is immaterial unless it appears that something more could have been done effectually. There was no evidence that the engine went back from its reverse or that the brakes were relaxed, yet the court gravely left it to the jury to decide whether or not they believed it had any effect, a thing impossible for them to decide, there being not a tittle of evidence on which to base a finding on the point, with every reliable fact against the supposition. A court cannot properly deal with such a subject in this mischievous, slipshod way—giving a fact of no value at all the importance which it does not possess.

2. The other objectionable instruction for the plaintiffs lays down the law that if the mules continued by the side of the track for three hundred and twenty-five yards, and were seen from a point six hundred yards from where they were struck, and the train could have been stopped short of the place of killing, the company is liable.

This without regard to the conduct of the animals in first running to the path and then suddenly quitting it and getting in front of the engine. No qualification is made. Seen from a point six hundred yards from the place they were struck, if running by the side of the track the engineer's duty is to stop the train if it can be stopped.

According to the observation of every one who travels by rail in this State, cattle are seen crossing the track and often running by the side of it or on it, and trains as a general rule are not stopped, whether or no. If so the speed and certainty of railroad travel would be completely revolutionized and become a sort of ride and tie affair. In a *vast majority* of such cases the cattle alarm suffices. If it does not the speed is checked without stop-

ping.  This in a vast majority of cases.  It is impossible to say where a mule or cow will go.  The course of the engineer is dependent on freaks which no sagacity can foresee.  He uses his best judgment.

He is to avoid stopping if possible, but ought to stop when that appears to him the surest and safest course.  Try the alarm ; then, as a precaution, slacken speed ; and finally, if collision is probable otherwise, stop the train.  The court here took the whole subject in its hand and decided that it was a case for abrupt stop if it could be done short of the place of killing, taking no account of the mules coming in a run to the path on the embankment where they were safe as shown, and then suddenly jumping ahead of a slow-moving engine just in front of the trestle.

*W. P. Harris* also argued the case orally.

*Calhoon & Green,* for the appellees, filed a brief, but withdrew the same after the decision of the case.

*S. S. Calhoon,* of counsel for the appellees, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

The first instruction for the plaintiffs should not have been given.  There is no evidence tending to show that the jumping from the train by the engineer had any influence in producing the death of the mules or that his remaining at his post of duty could have had any influence to avert the collision.  The testimony is that everything possible had been done by the engineer to stop the train, and it was after this, and when he could do no more, and saw that a collision was inevitable under circumstances threatening peril to his own life, that he leaped from the engine.  Called on to choose between his own safety and that of two mules, he had the right to prefer his own, and if he stood at his post as long as he could do anything effectual toward stopping the train, and abandoned it only after having done all he could and when it appeared that his own safety required it, he was not culpable, and this should not be made a ground of recovery against the company.  Valuable as a mule is, a human being is more so in legal contemplation.

Another instruction for the plaintiffs is that if the mules ran

along the track and road-bed three hundred and twenty-five yards, and that the engineer could and did see them at a distance of six or seven hundred yards, and that the train could have been stopped before it reached the point of collision with the mules, the finding should be for the plaintiffs.   It is not clear what proposition this instruction contains.   If it announces merely that the train should have been stopped, if it could be, after the mules got on the track and showed a disposition to keep on it, it is correct.   If it contains the proposition that it was the duty of the engineer to stop the train or try to do it as soon as he saw the mules in the neighborhood of the road-bed, it is not correct, and this seems to be the intent of the instruction, for otherwise the distance at which the mules might have been seen was unimportant.   It is not the duty of the engineer to stop his train until there is an apparent necessity for it.   Ordinarily, the discovery of animals or persons near the road does not require the stopping of the train.   That should occur only when it seems to be necessary to avoid collision.   Unless appearances reasonably indicate danger of the object going upon the track, an effort to stop is not required, but when existing conditions suggest the danger regard should be had to them, and failure in this will constitute negligence, of all which a jury is to judge under proper directions, and should not be told that as matter of law a failure to stop in three hundred and twenty-five yards or after seeing the mules for six hundred or seven hundred yards was sufficient to carry the verdict.

*Reversed and remanded for a new trial.*