THE ST. LOUIS, ALTON & TERRE HAUTE RAILROAD
COMPANY

v.

JOHN R. RUSSELL.

*Railroads—Negligence of—Injury to Stock—Crossings—Signals.*

1.  A railway engineer seeing domestic animals grazing near a crossing, is not bound for that reason to stop or slow his train.

2.  It is the duty of such engineer to slow or stop his train when such stock is on the crossing, or in such proximity thereto that a collision may be expected.

3.  The engineer must, in such cases, use reasonable care and diligence in the management of his train to prevent injury to stock.

4.  An instruction should not define particular acts in a given case as negligence.

[Opinion filed June 9, 1891.]

APPEAL from the Circuit Court of Williamson County; the Hon. R. W. McCARTNEY, Judge, presiding.

Messrs. CLEMENS & WARDER, for appellant.

Messrs. DUNCAN & RHEA, for appellee.

PHILLIPS, P. J. This was an action on the case brought by appellee against appellant for killing stock at a public road crossing by appellant's locomotive. The appellee claims there was negligence in the management of the train by appellant's employes. The evidence shows several head of animals were grazing along the side of the public highway at a distance of about forty yards from where the railroad crosses the same, and as the train approached the crossing, the animals started to run across the track, and one that was grazing farthest from the crossing was struck and killed at the crossing. The negligence claimed to exist was, that the animals, where grazing, could be seen from the locomotive for a distance of about three hundred and ninety-one yards, and it is further

claimed that the statutory signals were not given and that no whistle was sounded until within about three hundred yards of the crossing. The public highway runs east and west, and the railroad runs diagonally across the same. Three witnesses swear the bell was rung as required, while one swears he did not hear the bell. But one witness testified from observation to the circumstances of the killing of the horse. He was at his house, several hundred yards away, and saw several head of animals grazing about forty yards west of the crossing, and when the train whistled, the animals started to run along the public highway.

The train was running at a high rate of speed, and as testified to by the engineer, was running nearly thirty miles an hour when the animal was struck. The negligence claimed, is in failing to see the animal. The engineer testifies that he did not see the animal that was struck until it came on the road in front of the train, at almost the moment it was struck. The fireman says that as the animal came running across he said to the engineer, "Look out," and the animal jumped on the track in front of the train; but had the engineer seen the animal coming down the lane, that fact would not have required him, in the exercise of proper care, to stop or slow the train. It would not have furnished any reason to suppose the animal would continue to come on and attempt to cross the track immediately in front of the train. In relation to the signals, the train hands were positive they were given; the plaintiff's witnesses did not hear them. While that was a question for the jury, yet how could it be said that if the whistle had been sounded a quarter of a mile away, or if the bell had been rung at a point a quarter of a mile distant and kept ringing continuously up to the crossing, that it would have prevented the accident? There is no evidence in the record to show that it could have in any manner prevented it, and when the train emerged from the cut approaching the crossing, a distance of three hundred or four hundred yards, the noise of the train startling the animals, does not afford a conclusion that if the bell had been rung and kept ringing a quarter of a mile beyond

St. L., A. & T. H. R. R. Co. v. Russell.

the point, that it would have prevented the accident. The fourth instruction asked by the appellee was, that if the animal was killed by a passing train of cars, and before it was killed it was in view of the engineer and fireman of the train, and that it was seen or could have been seen by them with the use of ordinary care and attention, in time to have slackened the speed of the train and avoided the accident, and that no efforts were made by them in that direction, then this was such negligence as rendered the company liable. This instruction omits a material question. The law does not require a train to be stopped or slackened because an animal may be in plain sight from the engine as it grazes on the highway fifty or sixty yards from the railroad crossing. It must be on the crossing or in such proximity thereto that a collision may reasonably be expected by those in charge of the train, unless the train be slackened or stopped. The fifth instruction asked by the appellee is, that if the jury believe from the evidence that the plaintiff's mule was killed by the engine or train of the defendant while on the crossing, and that the persons in charge of the train or engine could have seen the mule on the track, or in dangerous proximity thereto, in season to have stopped or slackened the speed of the train, and prevented the injury, and did not see said mule, or seeing it in season to have avoided the injury did not do so, then they would be guilty of such negligence, for which the company would be liable. The engineer in charge of the engine is required to use reasonable care and diligence in the management of the train to prevent injury to stock, and this is the extent to which the requirement goes; but as presented by this instruction, the question of reasonable care and diligence is omitted, and the liability placed on the grounds of it being possible to see the mule and not whether, in the exercise of reasonable care and diligence, it could have been seen. The instructions are further erroneous in defining the particular acts as being negligence. The fourth and fifth instructions are erroneous in these particulars, and the judgment must be reversed and the cause remanded.

*Reversed and remanded.*