[No. 6263.]

The Chicago, Burlington and Quincy Railroad Company v. Church.

1. **Negligence—Burden of Proof**—Where, in an action for negligence, no violation of any statute is involved, plaintiff must show that the injury complained of was the result of defendant's negligence; and such negligence must be clearly established either by direct or circumstantial evidence.—(587)

2. **Railroads—Live Stock on Highway Crossing**—The engineer of a railway train is not under duty to even check his speed, merely because cattle are seen near a highway crossing. Unless the animals are already in danger or are likely to presently go upon the crossing, and the engineer sees, or by reasonable circumspection could see, such probability of danger, in time to avoid doing injury to the animals, it is not negligence on his part to continue at speed.—(591)

The appearances must be such as would excite in the mind of a reasonably prudent man the fear of injury to the animals, before he is required to take measures to avoid such injury. The evidence examined and held not sufficient to charge the railway company.—(591)

*Appeal from Jefferson District Court* — Hon. GEORGE W. ALLEN, Judge.

Mr. E. E. WHITTED, Mr. R. H. WIDDICOMBE and Messrs. VAILE & WATERMAN for appellant.

Mr. J. W. BARNES for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

Action to recover for the value of plaintiff's cattle killed through the alleged negligence of defendant, by its locomotive and train of cars. Verdict and judgment for plaintiff, from which defendant appeals.

The defendant operates trains of cars upon railroad tracks extending from Denver to Boulder. The plaintiff resides about four hundred feet south of a point where the cattle were killed. In front of his house, running north and south, is a wagon road which the railroad crosses at an angle from the south to the north, bearing a little east. It was on this crossing the cattle were struck and killed by defendant's train approaching from the south. The train consisted of an engine, seventeen freight cars and a caboose, traveling at the usual rate of speed—sixteen to twenty miles per hour. The railroad track at the point in question was on an embankment rising several feet above the surrounding ground, and the wagon road had a sharp up-grade thereto, beginning about one-half the distance from plaintiff's house to the railroad track. About a quarter of a mile south of the crossing was a whistling post, where northbound trains approaching the crossing were accustomed to

give signals. On the day in question, the cattle had gotten out of the barn lot, and neither plaintiff nor his witnesses knew the whereabouts of, or the danger in which the cattle were, until the stock alarm was given, a second or two before the cattle were killed.

Plaintiff's barn and appurtenant yards where he kept his cattle at night, were across the wagon road opposite his house. North of the railroad crossing plaintiff had a pasture, where he kept his cattle during the day. His custom was to take the cattle from the barn yard, along the wagon road, across the railroad tracks to the pasture each morning, and return them to the barn lot in the evening. The accident occurred between seven and eight o'clock in the morning. The track was straight from the whistling post for a considerable distance beyond the crossing, and between the two points there was nothing to obstruct the view. From a point on the railroad one-eighth of a mile south of the crossing, "one hundred and fifty feet of the wagon road" south from the railroad right-of-way—which was one hundred feet wide—could be plainly seen. No whistle was blown, or alarm given until about a second before the cattle were struck, and the speed of the train was not slackened. The evidence of the plaintiff tended to establish the foregoing facts, and we will assume that they were fully proven.

According to defendant's evidence, the regular crossing whistle was given; the engine was equipped with an automatic bell, which had been ringing from the time the train left Denver until the accident occurred; the train was slackened in so far as it could be, and stopped at the water tank beyond the crossing; a grove of trees between plaintiff's house, extending to within thirty feet of the railroad track, and along it for four or five hundred feet, obscured the view of the wagon road from one approaching the

crossing on the track from the south; the cattle were being driven at the time by a young man who apparently had charge of them; the train was running on a down-grade, and could not have been stopped in less than seven to nine hundred feet. The engineer in charge of the train died subsequent to the accident, and his version of the collision was not before the court. The train brakeman testified that he heard the stock alarm and looked forward, and "could just see the tops of the cattle—the road as it approaches the railroad crossing rises up and these cattle were on the other side toward the south of the crossing on the wagon road that led up to there, and I don't think he had whistled more than four or five short blasts till these cattle swung around and rushed up on to the crossing."

This is the only evidence introduced by either side to indicate clearly how the cattle had approached the crossing, how long they were upon it, or in what position they were at any time when the engineer might have avoided the collision. Plaintiff's witnesses observed nothing until they heard the stock alarm, and, immediately upon looking, saw the cattle struck.

The violation of a statutory duty is not involved. Defendant's liability depends entirely upon the common law, and the rights of the parties must be measured thereby. In order to maintain the action, it was essential that the proof show that the alleged killing was through the negligence of the defendant in operating the train of cars in question. In this requirement, defendant contends that the proof was insufficient, thus presenting the question whether the evidence, taken as a whole, authorized the submission of the matter to the jury.

There was no evidence whatsoever upon the subject of position, or movement of the cattle prior to

the time they were struck by the train, except that furnished by defendant, which will be hereinafter considered. Plaintiff did not attempt to show that as the train approached the crossing, the cattle were either moving toward, standing upon, or traversing the track, or in any apparent danger. Considering the case as made by plaintiff, the rule announced in *B. & M. R. Co. v. Campbell,* 20 Col. App. 360, 363, is peculiarly applicable. It is there said: "We have no light upon the circumstances attending the alleged collision. There is no evidence as to where the animal was when the train came in sight. There is no evidence as to when she came on the track. For aught that appears, she was down in the excavation along the track and attempted to cross the railroad immediately in front of the engine, as did the cow in *C. & S. Ry. Co. v. Beeson,* 19 Col. App. 241, when the collision was unavoidable. The facts of the alleged collision, so far as they appear, are entirely consistent with the exercise of reasonable care in the operation of the train of appellant by its employees."

That there can be no presumption of negligence is elementary. "Its existence must appear by proof; and until it does so appear, a party whose case is based upon it, is without a cause of action."—*D. & R. G. R. R. Co. v. Robinson,* 6 Col. App. 432; *D. & R. G. R. R. Co. v. Priest,* 9 Col. App. 103, 105.

Plaintiff's evidence fails to show that the cattle were in a position of real or apparent danger, at any time, until the moment of the accident. This was insufficient. It was incumbent upon him to show that the cattle were, either in a position of danger or would presently likely so be, and that defendant had notice thereof, or, by the exercise of reasonable diligence, could have had notice thereof for a sufficient

length of time before the accident, to have avoided
it by the exercise of reasonable care. "Merely be-
cause an animal may be near the track of a railroad
does not require an engineer to check the speed of
his train, unless there is something to indicate that
the animal may go upon the track."—*Rio Grande
Western R. R. Co. v. Boyd,* 44 Colo. 119, 124. So
far as plaintiff's evidence indicates, the cattle may
have been standing perfectly still, facing in a direc-
tion opposite from the track, in close proximity there-
to, yet in no apparent danger, and to have suddenly
come upon the crossing at a time when it was impos-
sible for the defendant, exercising the greatest care,
to avoid the collision. To sustain the verdict upon
the evidence presented by plaintiff, we would be com-
pelled to resort to surmise and conjecture. We
would have to assume that the cattle were upon the
railroad track, or in such close proximity thereto,
and under circumstances indicating a present danger,
and that such conditions existed for a sufficient length
of time to enable the defendant, if exercising reason-
able care and ordinary diligence, to have discovered
their peril and taken proper precaution to avoid the
injury.—*St. Louis, etc., R. R. Co. v. Russell,* 39 Ill.
App. 443. The onus of proof of these facts was upon
the plaintiff; and it was essential that such facts be
clearly established, either by direct or circumstantial
evidence. A verdict based upon conjecture and in-
ference, or upon the bare fact of killing, cannot be
upheld. In *Grant v. Hannibal, etc., R. R. Co.,* 25
Mo. App. 227, 231, cited with approval in *Rio Grande
Western R. R. Co. v. Boyd, supra,* it is said: "It
is the settled law  *  *  *  that, where cattle are
standing or moving about near a railroad track, at a
point like the one in question, the servants in charge
of an approaching train of cars are not required to

either slacken the speed of the train, or to sound the
alarm signals; and that no negligence is properly
chargeable against the railroad, until after its serv-
ants discover, or when it may be presumed, from all
the facts and circumstances in evidence, they had
discovered that such animal had passed onto the
track, or was making such movement thereto as to
induce a reasonable person to apprehend that the
animal is about to enter thereon.   Then it becomes,
and not until then, the duty of such servants to put
forth every effort at their command to avoid a colli-
sion, having regard, in checking or managing the
train, to its safety.''

Plaintiff, however, contends that if his evidence
was insufficient to establish his case, such deficiency
was supplied by the evidence of defendant.   We are
unable to agree with his contention.   On the con-
trary, defendant's evidence supports the theory, that
the collision was unavoidable.   The width of the
wagon road, and the conditions on either side there-
of, are not disclosed in the record, except as it may
be gathered from defendant's evidence, and the fact
that the railroad, as hereinbefore stated, is consider-
ably higher than the surrounding country and the
wagon road is on an up-grade thereto.   The uncon-
tradicted testimony of the train brakeman was, that
the wagon road, as it approaches the railroad track,
is on an up-grade, and the cattle were on the other
side of the wagon road from the approaching train;
that when the alarm signal was given he looked for-
ward and ''could just see the tops of the cattle,'' and
not more than four or five short alarms had been
given ''till these cattle swung around and rushed up
on to the crossing.''   In *St. Louis, etc., R. R. Co. v.
Russell, supra,* the facts of which are quite similar
to those of this case, it is said:   ''But had the en-

gineer seen the animal coming down the lane, that fact would not have required him, in the exercise of proper care, to slow or stop the train. It would not have furnished any reason to suppose that the animal would continue to come on and attempt to cross the track immediately in front of the train.''

Plaintiff asserts that *C. & S. Ry. Co. v. Charles,* 36 Colo. 221; *C. & S. Ry. Co. v. Webb,* 36 Colo. 224; and *Rio Grande Western R. R. Co. v. Boyd, supra,* are similar in facts to the case at bar, and support his contention. An examination of those cases discloses facts entirely different from those in the case at bar. In the *Charles case,* on page 223, it is said: ''Plaintiff's cow, together with several others, was walking west in the direction of the approaching train, in the middle of the track in a deep cut.'' And it was therein shown that the engineer, keeping a proper lookout, might have seen the cow on the track when his train was one hundred to one hundred and fifty feet distant from such animal, and as the train could have been stopped within a distance of about seventy feet, the company was very properly held liable.

In the *Webb case,* it appears on page 227, that plaintiff's horse was standing in a lot adjoining, or close to, defendant's railroad track—when one of its passenger trains was approaching; that the whistle of the engine frightened the horse, and he at once started toward the track; that ''while attempting to cross it or to run down the track, was struck by the engine'' and killed. It is further therein stated, that there was evidence to show that after the whistle was sounded, and after the engineer saw, or by the exercise of ordinary diligence might have seen, the horse running towards or down the track, there was ample time to have stopped the train before the horse was struck.

The *Boyd case* appears to have been decided upon the assumption that the Stock Act of 1902 was applicable, which made the killing or injury of an animal by a railway company *prima facie* evidence of the latter's negligence. Moreover, it is there held, that under the circumstances of that case, ''there was sufficient to apprise the engineer and fireman that there was danger of the cow going upon the crossing'' in ample time for him to have avoided the collision by the exercise of reasonable care. In that case there was evidence that the animal killed could have been seen by the engineer from one-half to three-fourths of a mile, at any point on the wagon road four hundred feet north from the crossing, from which direction the animal came; whereas, in the case at bar, no evidence was presented showing the condition of the highway upon which the cattle were traveling, except as hereinbefore stated. The proof fails to show that the entire width of the highway was visible. From aught that appears the cattle might have been on the east side, or beyond the wagon road on the slope to the crossing, and thus entirely hidden from the approaching train. The writer of the opinion in the *Boyd case,* subsequently, in the case of *D. & R. G. R. R. Co. v. Dunn,* 46 Colo. 150, 155, announced and approved the rule we have here adopted, and stated that in the *Boyd case,* while not decided, it was assumed, that the Stock Act of 1902 was applicable. We can distinguish no difference in principle between the *Dunn case,* and the one at bar.

The court instructed the jury that if they believed from the evidence ''that the persons in charge of the engine and train of cars in question, by ordinary care, skill and prudence, could have seen the animals, or that they did see them in season, so that by the use of ordinary care and skill, and without

danger to the train, they might have stopped the train before striking the animals and thus avoided the injury, and did not do so, this would be such negligence as would render the defendant liable for the injury and damage sustained,'' unless plaintiff's own fault contributed to the injury. Under the circumstances of this case, we think the instruction erroneous. It, in effect, declares that if the employees in charge of the train did see, or, in the exercise of ordinary diligence, could have seen the animals, regardless of where they were, so that by ordinary care the train might have been stopped before striking the animals, the defendant was liable. We do not think the defendant was required to stop or slacken the speed of its train, until its servants saw, or, by the exercise of reasonable care, could have seen the cattle in a position of danger, or, at least, in such close proximity to danger as to cause a reasonably prudent person to believe that they were likely to be injured unless proper effort was put forth to avoid it. ''Under this instruction the jury might well have felt authorized to find the requisite negligence, if the servants saw the cow anywhere near the track, and failed to stop or check up the train, regardless of any indication of a movement on her part to approach the track.''—*Grant v. Hannibal, etc., R. R. Co., supra.*

''It is not the duty of the engineer to stop his train until there is an apparent necessity for it. Ordinarily, the discovery of animals or persons near the road does not require the stopping of the train. That should occur only when it seems to be necessary to avoid collision. Unless appearances reasonably indicate danger of the object going upon the track, an effort to stop is not required.''—*Yazoo, etc., R. R. Co. v. Brumfield,* 64 Miss. 637, 641; 1 Sn. 905.

It certainly cannot be the duty of a railroad company to stop its passing train simply because animals are near its track, even though at a crossing. This duty can only arise when there is something to indicate its necessity. Plaintiff, however, claims that the instruction has been approved, and was taken bodily from Sackett's Instructions to Juries, p. 414. This may all be true, yet it does not follow that it was a proper instruction to be given in the case at bar. It is easy to conceive of a case in which the instruction would not be inapplicable to the facts, although, as an abstract proposition of law, it would be erroneous. Where, by the facts, it is conceded that an animal killed or injured was at all times clearly in a position of danger known to the defendant, or which by the exercise of reasonable diligence and ordinary care should have been known, the instruction might not be objectionable. In the case at bar, the facts are otherwise, and the instruction was inapplicable thereto. The evidence here shows that the cattle were in a safe position until the instant they were struck, more clearly than it shows that they were in a position of peril prior thereto for a sufficient length of time to have enabled the defendant, though exercising the greatest diligence and care, to have avoided the collision. The evil of this instruction was not removed by other instructions given.

Other assigned errors argued, we deem unnecessary to consider. The judgment is, therefore, reversed and the cause remanded for proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE BAILEY concur.