[No. 3305.]

CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO. v.
RHODES.

1.  APPEALS—*Objections Not Taken Below.*  In an action to re-
cover the value of certain cattle killed upon the tracks of a rail-

way, operated both by defendant and another corporation, plaintiff offered to show payment made by defendant to a third person for cattle killed in the same accident with those of plaintiff. The evidence was offered as an admission of liability. On appeal it was urged by defendant that this payment was made in compromise of a disputed liability. This position not having been taken below, the contention was rejected.

2. EVIDENCE—*Admissions—By Conduct.* Plaintiff's steer, besides cattle owned by another, were found dead in the early morning, in proximity to a railway, night trains upon which were operated both by defendant and another corporation. There being no evidence that all the animals were killed by any train of defendant, or at the same time, or by the same train, payment by defendant to the other party was held no evidence of an admission of liability to plaintiff.

3. —— *Letter Failing to Deny an Assertion in That to Which It Replies,* may amount to admission. Plaintiff wrote defendant's claim agent, demanding the value of an animal which the letter asserted had been killed by defendant's train. The claim agent's reply was held an implied admission of that assertion. But not of negligence which would charge defendant.

4. —— *Admissions of Agent Affecting Principal.* The admissions of the claim agent of a railway company, touching a claim against the company in his hands for adjustment, affect the corporation.

5. NEGLIGENCE—*Not Presumed.* In an action for the value of an animal killed by railway train, the plaintiff must prove negligence of defendant in the operation of the train. Proof of the death of the animal, and that it was killed by defendant's train, raises no presumption of negligence.

*Appeal from Denver District Court.* HON. BOOTH M. MALONE, Judge.

Mr. J. C. HELM, Mr. C. W. WATERMAN, Mr. WILLIAM A. JACKSON, Mr. M. A. LOW, for appellant.

Mr. THOS. H. HARDCASTLE, Mr. R. W. McCRILLIS, Mr. ARTHUR PONSFORD, for appellee.

WALLING, Judge.

Appellee brought suit against the appellant upon four separate alleged causes of action, to re-

cover damages for the killing of three cattle, and the injuring of a cow, by trains of the appellant, in the vicinity of Deer Trail, Colorado. The first two counts of the complaint charged respectively the killing of a steer and a cow, both belonging to the plaintiff, the steer having been killed on January 16th, 1902, and the cow on August 4th, 1904. The third count was based on the killing of a cow of one Spillane, on October 24th, 1904. Spillane subsequently, to-wit, on January 6th, 1905, assigned to plaintiff his claim against the defendant for the killing of the cow. Appellee concedes that the evidence was insufficient to justify a verdict for the plaintiff on the fourth count, and special reference to the allegations of that count is unnecessary. Each of the first three counts contained allegations to the general effect that the damage therein complained of was the result of negligent operation of one of defendant's trains; and there were statements in each of the second and third counts, which were apparently intended to state a case within the provisions of chapter one of the session laws of 1902, sometimes called the "railroad fencing act."

Probably it should be noticed that, after the cause was transferred into this court, a motion to remand it to the supreme court, under section six of the act creating this court, was filed by the appellant, the stated ground being that the determination of the appeal necessarily involves the construction of provisions of the federal and state constitutions. Examination of the briefs on file indicates that it was at one time the supposition of counsel on both sides that the decision of the case required investigation of the constitutionality of the fence act of

1902. The motion to remand, however, was not pressed in any way, and at the oral argument, was definitely abandoned, counsel on each side taking the position that the act of 1902 is not involved in the decision of this cause. . It was the position of counsel for the appellant, in argument, that since the supreme court has decided that the fence act mentioned was void *in toto* (*Denver, etc. Railway Co. v. Moss,* 50 Colo. 282), it never had existence in legal contemplation; while appellee's counsel insisted that the district court wholly disregarded the act, as being either invalid, or inapplicable in the circumstances of the case, so that the case was actually tried and submitted to the jury on the theory alone of common law negligence. For the purposes of this review, the statements of counsel on both sides in that particular may be accepted as correct, since in either aspect it is clearly our duty to proceed to a final decision of the cause.

All of the evidence at the trial was produced by plaintiff, the defendant offering no proof. After, plaintiff rested his case, a motion was made on behalf of the defendant that the jury be instructed to return a verdict in its favor on all four counts. That motion was denied, and the case was submitted to the jury upon a series of instructions as to the law applicable to the case. Only one of the instructions given by the court is questioned here. The jury returned a verdict for the entire amount claimed under all four causes of action, one hundred and thirty-five dollars. Motion for a new trial was made by the defendant. Upon the hearing of that motion, the court required the plaintiff to remit

the sum of thirty dollars, and upon his electing to do so, overruled the motion, and ordered judgment to be entered upon the verdict for one hundred and five dollars. It seems to be agreed that the thirty dollars remitted included the amount claimed in the fourth count, to-wit, twenty-five dollars, and five dollars excessive damages under the third count. Errors have been assigned on the appeal from the judgment, based upon the exceptions taken by the appellant to the overruling of its motions for a directed verdict and for a new trial, the entry of the judgment, the giving of the instruction numbered seven, as well as to various other adverse rulings of the court during the progress of the trial.

The animals were killed near a station on the Kansas division of the Union Pacific railway, known as Deer Trail, fifty-six miles east of Denver. No witness saw any of the animals struck by a train, and none saw the train by which any of them was killed. The steer and cow mentioned in the first and second causes of action were found lying dead near the railroad track, by section men in the employ of the Union Pacific company, when the men went to their work in the morning. There were some indications leading to the conclusion, in each instance, that the animal was struck by a train during the night before it was found.

No witness saw either of plaintiff's animals on or near the track, or at any stated time prior to the killing of the same. The evidence tended to show that the railroad tracks and property generally belonged to the Union Pacific company, which also employed the section men, and that the latter com-

pany, and also the defendant, operated their trains over the tracks between Denver and Limon, both companies running regular trains past the station of Deer Trail and the points where the various animals were killed. It appeared from the testimony of the witness Spillane that for seven years prior to 1904, and during that year, the defendant ran one eastbound and one westbound passenger train every night over those tracks, and that night trains were also operated over them by the Union Pacific company during the same period. The evidence was generally meager and unsatisfactory, and much is left to inference and conjecture.

The steer, which was the subject of the first cause of action, was found on the morning of January 17th, 1902, some twenty or twenty-five feet north of the railroad track, by one of the section men in the employ of the Union Pacific company, named Graff, and lying near by, there were five other cattle, four of them dead and one very badly hurt. The five cattle last mentioned belonged to a Mr. Epler, who was also a witness at the trial. It cannot be determined from the record how near the animals were to each other, when they were found. The most definite statement in that particular was made by the plaintiff, who, after stating that he saw his dead steer, near the railroad, on the morning of January 17th, 1902, further testified:

"Q. Were there any other cattle there? A. Yes. Q. What cattle? A. Five of Mr. Epler's. * * * Q. How were they lying when you saw them? A. Well, I think several of them were on the left-hand side of the track; I don't remember

whether there were any on the right-hand side or not.   Q.  Were they all dead then?   A.  I think one of them showed some signs of life.   If I remember rightly, the section men killed him.   That was not my steer.''

The section man, Graff, said that the animals were all killed at the same time and by the same train, but this was evidently a mere supposition on his part, no facts appearing to support any such conclusion.   It was stated by counsel for the plaintiff that the cattle were killed in the night, and it was impossible to prove the facts by anybody that saw the occurrence—and that statement is probably borne out by the testimony of all witnesses who had anything to say about that particular event.   Epler testified, as a witness for the plaintiff, that the defendant's claim agent had made a settlement with him, in June, 1904, in which he, Epler, was paid two hundred dollars for his cattle killed prior to that time, and in that connection Epler was permitted to testify, against the objections of counsel for the defendant, as follows:

''Q.  Now, was this particular accident on the sixteenth of January, 1902, referred to between you and the agent?  A.  Yes, sir.  Q.  Were they included in the amount paid?  A.  Yes, sir.  Q. And you actually received pay for them?  A.  Yes, sir.''

The record does not show that objection was made to the form of the questions, but repeated protests were made against Epler's entire examination, by the defendant's objections and motions to strike, on the grounds that the testimony was irrelevant,

and immaterial, and incompetent to prove that plaintiff's steer was killed by the defendant. The admission of this testimony of the witness Epler is urged as one of the grounds for the reversal of the judgment. At the time of introducing the questioned testimony, counsel for plaintiff stated his purpose in so doing as follows: "But the question now is— what train killed those cattle? They were all killed at one time by one train and in one bunch and all found together. Now, I propose to show this defendant company not only paid for part of those cattle, belonging to another owner, it is true, but their agents paid it in settlement, and admitted the accident. I propose to follow the payment up, by his admission that they were paying for those cattle killed by that train. The cattle were killed in the night, and it is impossible to prove it by anybody that saw it." On behalf of the appellant it is urged, first, that the payment for the Epler cattle by defendant's claim agent was in the nature of a compromise of a disputed claim, and, consequently, that the facts of the settlement were not admissible in evidence for any purpose, and, further, that the testimony was, in any aspect, intrinsically valueless as an admission of liability to the appellee. With respect to the claim that the payment to Epler was a compromise, the bill of exceptions fails to disclose that objection to the testimony was made on that ground, and, by a familiar rule, the appellant cannot be heard to urge the contention for the first time in the appellate court. Moreover, the only statement of the witness, which might be fairly construed as giving to his transac-

tions with the claim agent the character of a compromise, was struck out on the motion of the defendant at the trial. The question of the relevancy of the testimony, as evidence of an admission on the part of the defendant, of which the plaintiff might take advantage, is one of some difficulty. The authorities seem to sustain the proposition that, if the proof justified the assertion of plaintiff's counsel that Epler's cattle and plaintiff's steer were killed at the same time and by the same train, proof of the payment to Epler for his cattle, unless objectionable under the rule excluding the facts of a compromise, was admissible as evidence to charge the defendant with responsibility for the common disaster, and this upon the ground of implied admission. *Howland v. Bartlett,* 86 Ga. 669; *Grimes v. Keen,* 52 N. H. 330; *Campbell v. Mo. Pac. Ry. Co.,* 86 Mo. App. 67; 16 Cyc. 954. But where the proof failed to establish the identity of the cause of injury, the payment to the stranger to the action of no probative value, and irrelevant. *Missouri etc. Co. v. Fullmore,* 29 S. W. 688. No competent evidence was introduced to establish the fact that the cattle were killed by one train, and there was no presumption arising from the facts proved that all were killed by a train of the defendant. It is evident from the remarks of the court, in passing upon the objections interposed to this testimony, that he had grave doubts of its competency, and, in fact, it appears to have been admitted conditionally, with the view that its deficiencies might be supplied by further proof. However, there was no definite offer of proof by plaintiff's counsel of facts essential

to the admissibility of the testimony, and his state-
ment made at the time gave no substantial promise
of ability to supply it.   In these circumstances, the
discretion of the court was improperly exercised,
and the denial of the motion, made at the conclu-
sion of Epler's examination, to strike out his testi-
mony, was error.   If this conclusion were wrong,
nevertheless that testimony could be of no value to
plaintiff upon the record made by him in the trial.
Not only was there no attempt to introduce any
additional proof bearing upon the circumstances of
the killing of the plaintiff's steer, but the plaintiff
himself, testifying about that matter, said:  "I am
sure I had some letters from Mr. Graham, the claim
agent at Topeka, in which he refused to pay (*i. e.,*
for the steer).   Q.   Have you ever been in any way
compensated or paid for this steer?   A.   No."   And
in a letter written by him to defendant's superin-
tendent, of date December 8th, 1904, he wrote: "The
claim department has hitherto refused to pay for
my steer killed near Deer Trail, January 16th, 1902,
although payment has been made to a man who had
cattle killed at same time and by same train."   It
would be pressing the rule of implied admission to
an extreme limit to say that the proof of the set-
tlement with Epler established, *prima facie,* a lia-
bility to the plaintiff, which the defendant appears
to have denied expressly at all times; and it is not
claimed that there was any other evidence sufficient
to fix the responsibility for killing the steer upon the
defendant.   The allegations of the complaint to the
effect that the animals  therein  mentioned  were

killed by the defendant's trains, and as the result
of its negligence, were put in issue by the general
denial in the answer. The burden of proving those
allegations, by competent evidence of the facts,
rested with the plaintiff. *Denver etc. Railroad Co.
v. Colter,* 41 Colo. 445; *C. B. & Q. Railroad Co. v.
Church,* 49 Colo. 582.

Coming now to the evidence produced in sup-
port of the second cause of action, the cow was
found by Dennis Spillane, the foreman of the Union
Pacific company for the section including the sta-
tion of Deer Trail, on the morning of the twenty-
fifth of August, 1904. According to Spillane's tes-
timony, the cow was found dead about fifty feet
east of the station. The plaintiff, who saw the cow
on the same morning, stated that she was lying on
the right-hand side of the track, from a hundred to
two hundred feet east of the freight house. In con-
nection with the testimony of the plaintiff, there
was introduced some correspondence between him
and the superintendent, and the claim agent, of the
defendant, respectively, in the year 1904. On No-
vember 21st, a letter was written by the plaintiff to
defendant's superintendent, at Colorado Springs,
in which the former stated: "On October twenty-
second I wrote Mr. Kimball about some cattle I had
killed by your trains. On October twenty-sixth he
wrote me he had referred the matter to you and
that you would advise me. Will you kindly let me
hear from you, and oblige," etc. The superintend-
ent replied, under date of November twenty-sec-
ond, as follows (omitting address and signature):
"Your favor of twenty-first instant received, and

the matter will be given attention." Thereafter the plaintiff received the following letter:

"CHICAGO, ROCK ISLAND & PACIFIC RAIL-
WAY CO.

CLAIM DEPARTMENT.

Geo. E. McCaughan, Claims Attorney, Chicago, Ill.   A. A. Graham, Claim Agent, W. E. Clark, Adjuster, E. J. Smith, Adjuster, Topeka, Kas.

Topeka, Kas., Nov. 23, 1904.
C. B. Rhodes, Esq.,
    Deer Trail, Colo.
Dear Sir:

Respecting your claim for cow killed at Deer Trail, August 24th, 1904.  I do not think we are liable for this, and the claim must, therefore, be declined.

Yours truly,

A. A. GRAHAM."

On December 18th, following, the plaintiff sent the letter to defendant's superintendent, to which allusion has already been made, and wherein he wrote: "Mr. A. A. Graham, your claim agent, informs me your road will not pay for my cow killed August 24th, 1904.  The claim department has hitherto refused to pay for my steer killed near Deer Trail, January 16th, 1802, although payment has been made to a man who had cattle killed at same time and by same train.  This attitude forces me—and it is not just to compel me to hire an attorney—to bring suit for payment for both animals."  On December 9th, the superintendent wrote

to the plaintiff, acknowledging the receipt of the letter of December 8th, and advising him that it had been forwarded to "the claim agent, who has charge of such matters." And, on December twenty-second, the claim agent addressed another letter to the plaintiff, in which he said: "Your letter of November 21st, addressed to A. T. Abbott, Superintendent, has been referred to this office. As I wrote you November 23rd, as this steer was struck on station grounds, and at night, I am unable to pay the claim." It has been claimed in argument for the appellee that the last letter of the claim agent had reference to the cow killed on August 24th preceding, which was mentioned in the agent's letter of November 23rd, and that the word "steer" was inadvertently used in the letter of December 22nd; and, so understood, the last mentioned letter amounted to an admission, at least, that the cow was struck and killed by one of the defendant's trains. The first proposition stated appears to be sound, upon the face of the correspondence, particularly in view of the facts that, according to the plaintiff's statement, the claim agent had theretofore refused to pay for the steer killed in January, 1902, and that animal was killed, not at or near the station, but more than two miles east of it. It is probably true, therefore, that the letter of December 22nd was intended to refer to the case of the cow. As to the evidential value of the claim agent's letters, the first observation is that the plaintiff had definitely claimed that the cow had been killed by the defendant's train. If that was true, the fact must have been known to the employes of the defendant, in charge of the train by which the animal was killed. It was

certainly the duty of the claim agent, who had charge of such matters, to investigate the facts of the case, and his last letter indicated that he had done so in so far as he considered it necessary. He appears to have been at some trouble to assign a reason for the refusal to pay plaintiff's claim, and the reason he gave was not a good one, or at best was unsatisfactory. It is perfectly evident that, if he had been able to say that the cow was not killed by the defendant's train, he would at once have stated the fact and so ended the matter.

What was said by the court in *Fenno v. Westen,* 31 Vt. 345, is very much in point in this connection. That action involved an alleged breach of warranty in the sale of a horse. The following is taken from the opinion of the court:

"The plaintiff, on discovering the unsoundness of the horse, wrote to the defendant several letters, the purport of which was that the plaintiff, having bought the horse of the defendant upon a warranty of soundness, claimed damages for the breach of warranty. The defendant replied to the first letter denying that the horse was unsound, and saying nothing as to whether he sold the horse to the plaintiff or Kibbee. To the other letters he made no reply. * * * The omission of a party to reply to statements in a letter about which he has knowledge, and which if not true he would naturally deny, when he replies to other parts of the letter, is evidence tending to show that the statements so made and not denied are true. So where there has been a correspondence between parties in regard to some subject matter, and one of the parties writes a letter to the other making statements in regard to

such subject matter, of which the latter has knowledge, and which he would naturally deny if not true, and he wholly omits to answer such letter, such silence is admissible as evidence tending to show the statements to be true. Still all such evidence is of a lighter character than silence when the same facts are directly stated to the party. Men use the tongue much more readily than the pen. Almost all men will reply to and deny or correct a false statement verbally made to them. It is done on the spot and from the first impulse. But when a letter is received making the same statement, the feeling, which readily prompts the verbal denial, not unfrequently cools before the time and opportunity arrive for writing a letter. * * * As the omission to reply to letters may be explained by so many causes not applicable to silence when the parties are in personal conversation, we do not think the same weight should be attached to it as evidence. Where the party replies to the letter, but says nothing upon points which he would naturally contradict if untrue, * * * the silence furnishes a stronger proof of acquiescence in the alleged facts than the subsequent entire omission to reply."— *Fenno v. Weston,* 31 Vt. 345.

In the case of *Nichols v. Southern Pac. Co.,* 23 Ore. 133, which was an action to recover damages for the wrongful ejection of plaintiff from a train in which he was riding as a passenger, it was proved that the defendant's ticket inspector, in the line of his duty, examined the plaintiff's ticket, and, after examining it and requiring plaintiff to write his name on the back of it, informed the plaintiff that he was not the original purchaser of the ticket,

and that he must pay his fare or get off the train. It was held by the court that the reason given by the ticket inspector for rejecting the plaintiff's ticket was an implied admission, binding upon the defendant, that the ticket was authorized originally, and genuine. And so we think that the letter of the claim agent, wherein he failed to deny the assertion that plaintiff's cow was killed by a train of the defendant, while refusing to pay the claim of the plaintiff on other grounds, in the absence of any explanation whatever on the part of the defendant, was an implied admission, attributable to the latter, that the animal was killed by its train. See also *Lothrop v. Union Bank,* 16 Colo. 257. The very words of the letter of December twenty-second import that the animal was struck by the defendant's train. But no valid reason has been found or suggested for extending the implication to include an admission of negligence on the part of the defendant, which would charge it with legal liability for such killing. The claim of the plaintiff was not put expressly on such ground. Besides; the statement of the claim agent that the animal was struck "at night" may have been intended to refute any suggestion that defendant's servants were negligent in the premises.

The witness Spillane was the owner of the cow mentioned in the third cause of action, and all of the proof with respect to the killing of that animal rests upon his testimony. There were some facts stated by him, from which it might be inferred that his cow was killed, at about half past ten o'clock in the evening, by defendant's eastbound passenger train. He did not see the train, but he identified

it by the sound of the whistle of the locomotive, and by the train register at the station. He found the cow, about ten minutes after the train had passed, lying very near the track, about six hundred feet west of the station. As near as can be derived from his somewhat conflicting statements, the cow was still alive when he found her, but was so badly injured that she died almost immediately. This states the effect of the testimony in the most favorable light for the appellee. There was nothing to show the circumstances of the striking of the cow by the train.

Assuming that there was evidence that the animals mentioned in the second and third causes of action were killed by the trains operated by the defendant, still the plaintiff was not entitled to recover in the action, to any extent, in the absence of any evidence that either accident occurred in consequence of negligence on the part of the defendant. In this connection, it is enough to refer to the repeated rulings of the supreme court in passing upon cases of this general character. For example, it was said in the opinion of the court in *C. B. & Q. R. R. Co. v. Church, ibi supra*:

"That there can be no presumption of negligence is elementary. 'Its existence must appear by proof; and until it does so appear, a party whose case is based upon it, is without a cause of action.' —*D. & R. G. R. R. Co. v. Robinson*, 6 Colo. App. 432; *D. & R. G. R. R. Co. v. Priest*, 9 Colo. App. 103, 105. * * * It was incumbent upon him (plaintiff) to show that the cattle were either in a position of danger, or would presently likely so be, and that defendant had notice thereof, or, by

the exercise of reasonable diligence, could have had notice thereof, for a sufficient length of time before the accident, to have avoided it by the exercise of reasonable care. 'Merely because an animal was near the track of the railroad does not require an engineer to check the speed of his train, unless there is something to indicate that the animal may go upon the track.'—*Rio Grande Western R. R. Co. v. Boyd*, 44 Colo. 119, 124. \* \* \* To sustain the verdict upon the evidence presented by plaintiff, we would be compelled to resort to surmise and conjecture. We would have to assume that the cattle were upon the railroad track, or in such close proximity thereto, and under circumstances indicating a present danger, and that such condition existed for a sufficient length of time to enable the defendant, if exercising reasonable care and ordinary diligence, to have discovered their peril and taken proper precaution to avoid the injury.'—*St. Louis etc. R. R. Co. v. Russell*, 39 Ill. App. 443. The onus of proof of these facts was upon the plaintiff; and it was essential that such facts be clearly established, either by direct or circumstantial evidence. A verdict based upon conjecture and inference, or upon the bare fact of killing, cannot be upheld."

See also *D. & R. G. R. R. Co. v. Colter, supra; B. & M. R. R. Co. v. Campbell*, 20 Colo. App. 360.

It would be futile, in the present case, to undertake to determine the legal duties and responsibilities of the employes of a railroad company, operating a train upon a railway over the open prairie, with respect to straying stock upon or in the vicinity of the railway, because no specific facts are presented to which the discussion would be pertinent.

Patient investigation of the record has failed to reveal even a scintilla of proof upon which to predicate any inference of negligence on the part of the defendant. Therefore, the court was in error in refusing to direct the jury to return a verdict for the defendant upon all counts, upon the latter's motion for such instruction. For the same reason, and also because of the failure to produce any competent proof that the plaintiff's steer was killed by one of defendant's trains, it was error to deny the defendant's motion for a new trial.

No useful purpose would be accomplished by the consideration of other questions discussed by counsel. By reason of the errors above indicated, in overruling the objections to the testimony of Epler, and in denying the motions for a directed verdict and for a new trial, the judgment is reversed and the cause remanded.          *Reversed.*