[No. 8220.]

DENVER AND RIO GRANDE RAILROAD COMPANY V. BIRD.

1. RAILWAY COMPANY—*Injury to Animals on Track.* Where an animal is near to the tracks of a railway, and, frightened by an approaching train, attempts to cross the track, but not until the train is so near that the engineer is unable to come to a stop, with safety, the railway company is not liable for the death of the animal which ensues. (261, 262.)

2. —— *Statute Construed—Fencing Act.* Injury to an animal within the yard limits of an established station. It is not required by the statute (Laws 1911, c. 135), in order to the exoneration of the railway company, that the yard limits should be marked by sign or otherwise. (262.)

*Error to Mesa County Court.* Hon. WALTER S. SULLIVAN, Judge.

Mr. E. N. CLARK, Mr. J. A. MARSH and GEO. A. LUXFORD, for plaintiff in error.

Mr. HENRY R. RHONE, for defendant in eror.

Mr. JUSTICE SCOTT delivered the opinion of the court.

This is an action to recover in damages for the value of a cow of defendant in error, killed by the passenger train

of plaintiff in error, at Loma station, about sixteen miles west of Grand Junction.

Loma is an unincorporated town with two stores, blacksmith shop, a canning factory, and a few dwellings. It is a railroad station, with a side track or tracks, switches, etc. The railroad station appears to be a flag station, but having a depot and depot grounds. The train was a passenger train which was not scheduled to stop at Loma, and was running at a speed of from thirty to thirty-five miles per hour, and moving from east to west. The side track, at the point of the accident, is about fifteen feet north of the main track. The only witness who saw the accident, aside from the engineer, was a boy fifteen years of age, who testified on behalf of the plaintiff below. He says that shortly before the occurence, the cow proceeded from a point south, crossed the main track to the side track, upon which there were standing five cars, presumably loaded with beets, and the ends of which were connected, or so close together, that the cow could not pass between. That the cow stopped to eat beet tops from the second car from the easterly one, and that when she became alarmed by the near approach of the train, started to run across the main track in the direction from which she had come, and in so doing was struck by the engine.

It seems that the track curves at from one thousand to fiftteen hundred feet east of the depot, and that by reason of this curve, and because of the beet cars standing on the sidetrack, the engineer could not have seen the cow at a distance of more than one thousand to twelve hundred feet.

There is a road or street, crossing the railroad tracks, at a distance testified to as being from two hundred and fifty-six, to three hundred and two feet east of the depot building.

The engineer testifies that he did not see the cow until within one hundred feet of where she was struck. The boy

who saw the whole proceeding says: "The cow had just come upon the railroad track when I first saw the train coming. The cow was headed east along the beet cars; she was between the main track and the beet cars. After the train whistled, the cow just went on the way she had started; she had got to the second beet car from the crossing and there were some beet tops hanging in the car, and she was eating them. She was at the second beet car, and when she saw the train, she started away across the track the same way she came, and when the train got pretty close, she started to run; she was running when she was struck by the train. I saw her struck; when she was struck, she was partly off the last rail; her forefeet were off the track; she was running. The locomotive hit her from behind; knocked her off into the ditch.  *  *  *  I do not know, I think it is about 300 feet from the crossing to the depot, and she was about half-way between. The train was partly over the crossing before she started to run; she did not get on the track until later on. The engine was over the crossing when the cow got on the track. The engine had crossed the wagon road crossing when the cow got on the track. There were five cars on that siding. They were beet cars. The cars were between eight and nine feet from the ground, up to the highest rim of the car. I have never measured them but they were two or three feet higher than a man's head. I do not remember how close the engine was to the road crossing when the cow turned. The engine had passed the canning factory."

It will be seen that under the testimony most favorable to plaintiff below, that while the cow was near the track and eating from a car on the side track, she made no move toward leaving that position, until the approaching engine was within a distance variously estimated to be from one hundred and fifty to three hundred feet of her, and then started to run across the track. This was too late for the

engineer to protect her, for it is the undisputed testimony that the engineer could not have stopped his train with safety at the rate it was then moving, in less than nine hundred feet.

It has been held by this court, that: "Merely because an animal may be near the track of a railroad, does not require an engineer to check the speed of his train, unless there is something to indicate that the animal may go upon the track." *Rio Grande Western R. R. Co. v. Boyd,* 44 Colo. 119, 124, 96 Pac. 781, 783.

"Unless the animals are already in danger or are likely to presently go upon the crossing, and the engineer sees, or by reasonable circumspection could see, such probability of danger, in time to avoid doing injury to the animals, it is not negligence on his part to continue at speed." *Chicago Burlington and Quincy R. R. Co. v. Church,* 49 Colo. 582, 114 Pac. 299.

Clearly there was no such proof of negligence in this case as will entitle the plaintiff below to recover at common law.

The defendant in error, urges that this case falls within the fencing act of 1911. But the statute contains the exceptions from its provisions as follows: "Except at the crossing of public roads and highways, and within the limits of incorporated towns and cities, or the yard limits of established stations."

Plainly, Loma was an established station, and as clearly, the accident occurred within the yard limits. The occurrence was at a point within one hundred and fifty feet of the depot, between the side track and the main line, and between the switch and the depot.

It is true that the railroad company had not marked its yard limits by signs or otherwise, but the statute makes no such requirement. It was said in *Grondin v. Duluth S. S. & A. Railway Co.,* 100 Mich. 600, 59 N. W. 230:

"It must therefore be held that at least as much of the track and grounds outside of the switches as is required and is in actual use for reaching these side tracks is a part of the station grounds, to which the statutory requirement to fence does not apply. A railroad company is not required to make a formal separation or dedication of its station · grounds, nor to put up notices of their limits, especially in a new and unsettled country. Undoubtedly, if the animal had gone upon the track beyond the yard limits, and from there had entered the yard limits, where it was killed, the company would have been liable."

It must be held that under the facts of this case the act of 1911 cannot apply.

The judgment is reversed.

GABBERT, C. J., and GARRIGUES, J., concur.